2001 OK 60

George **VANCE, individually, and as natural father and next friend of Brenda Vance, deceased, and for and on behalf of the estate of Brenda Vance, deceased, Plaintiff–Appellant,**

v.

Marcel **MOLINA, M.D., Defendant–Appellee.**

No. 95,023.

Supreme Court of Oklahoma.

July 3, 2001.

Fred E. Stoops, Sr., Richardson, Stoops, Richardson & Ward, Tulsa, OK, for Plaintiffs–Appellants.

Karen L. Callahan and Leslie C. Weeks, Rodolph & Todd, Tulsa, OK, for Defendant–Appellee.

## OPINION

WATT, Vice Chief Justice,

### FACTS AND PROCEDURAL BACKGROUND

¶1 Brenda Vance, age 46, was five-feet four-inches tall but weighed 280 pounds. She lived near Tulsa, Oklahoma and in January 1998 went to Harris County, Texas for treatment of her obesity by Marcel Molina, M.D., a specialist in gastric segmentation, a surgical technique designed to help severely overweight patients lose weight. Following her surgery Ms. Vance returned to Tulsa. She started complaining of complications and was treated by Tulsa doctors. Ms. Vance and her doctors called Dr. Molina's office. Dr. Molina and his staff had several telephone conversations with Ms. Vance and her Tulsa doctors in which they discussed Ms. Vance's condition. In August 1998 Ms. Vance went back to Texas and Dr. Molina performed a second gastric segmentation surgery on Ms. Vance. Following the second surgery, Ms. Vance returned to Tulsa. Dr. Molina and his staff were again called by Ms. Vance and her Tulsa doctors and again discussed Ms. Vance's condition and treatment with them. Ms. Vance died in Tulsa on September 26, 1998.

¶2 Ms. Vance's personal representative, Plaintiff George Vance, sued Dr. Molina for medical malpractice. Ms. Vance also sued two of the local doctors who had treated her in Tulsa. Dr. Molina was served, via certified mail, in Harris County, Texas. Dr. Molina moved to dismiss plaintiff's action on the ground that Dr. Molina's contacts with the State of Oklahoma had been too tenuous to support his being joined as a defendant by "long-arm" service of process. The trial court agreed and dismissed Plaintiff's case against Dr. Molina. In a two-to-one opinion, the Court of Civil Appeals, Division 3, reversed and remanded the case to the trial court for trial on the merits.

### ISSUE

¶3 There is but one issue in this matter: did the trial court correctly dismiss plaintiff's action on the ground that the court did not acquire personal jurisdiction over Dr. Molina by reason of the service of process upon him, via certified mail, in Harris County, Texas? We hold that the trial court did correctly dismiss plaintiff's action.

### DISCUSSION

¶4 Service of process is governed by 12 O.S. Supp.1994 § 2004.[1] Subsections C., E., and F. of § 2004 authorize service of a sum-

---

1. In pertinent part, 12 O.S. Supp.1994 § 2004 provides:

A. SUMMONS: ISSUANCE. Upon filing of the petition, the clerk shall forthwith issue a summons. Upon request of the plaintiff separate or additional summons shall issue against any defendants.

. . .

C. BY WHOM SERVED: PERSON TO BE SERVED.

. . .

2. SERVICE BY MAIL.

. . .

b. Service by mail shall be accomplished by mailing a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee. When there is more than one defendant, the summons and a copy of the petition or order shall be mailed in a separate envelope to each defendant. If the summons is to be served by mail by the court clerk, the court clerk shall enclose the summons and a copy of the petition or order of the court to be served in an envelope, prepared by the plaintiff, addressed to the defendant, or to the resident service agent if one has been appointed. The

court clerk shall prepay the postage and mail the envelope to the defendant, or service agent, by certified mail, return receipt requested and delivery restricted to the addressee. The return receipt shall be prepared by the plaintiff. Service by mail to a garnishee shall be accomplished by mailing a copy of the summons and notice by certified mail, return receipt requested, and at the election of the judgment creditor by restricted delivery, to the addressee.

. . .

E. SUMMONS: TERRITORIAL LIMITS OF EFFECTIVE SERVICE.

. . .

2. When the exercise of jurisdiction is authorized by subsection F of this section, service of the summons and petition may be made outside this state:

. . .

c. in the manner prescribed by paragraph 2 of subsection C of this section,

. . .

F. ASSERTION OF JURISDICTION. A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.

mons by mail, including certified mail, and provide that such service may be made outside the state so long as due process requirements are satisfied under both the state and federal constitutions. Subsection F. of § 2004 states the test for determining whether jurisdiction has been attained: "A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States."

■ ¶ 5 The United States Supreme Court has long held that in order for out-of-state service of process to satisfy constitutional requirements and serve to acquire jurisdiction of a court over a nonresident defendant, "minimum contacts" must exist between the defendant and the forum state. The protection against inconvenient litigation is often described in terms of "reasonableness" or "fairness." The defendants contacts with the forum state "must be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *World Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 563–64, 62 L.Ed.2d 490 (1980), citing *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945).

¶ 6 We have not previously considered whether a physician who provides medical care in his home state to a patient who lives in another state but came to the physician for care may be sued by the patient in her home state. Cases from the federal courts and the courts of other states, however, have dealt with the issue. Most of those cases have held that a doctor who provides primary treatment to a nonresident in his home state and follow up advice to the patient and her local doctors in her home state can't be sued in the patient's home state. *Wright v. Yackley,* 459 F.2d 287 (9th Cir.1972); *Bradley v. Mayo Foundation,* 1999 WL 1032806 (E.D.Ky.); *Prince v. Urban,* 49 Cal.App.4th 1056, 57 Cal.Rptr.2d 181 (1996); *Vogel v. Bellows–Blakely,* 1999 WL 270330 (Tex. App.—Dallas).

¶ 7 Plaintiff relies on *Kennedy v. Freeman,* 919 F.2d 126 (10th Cir.1990) in support of his claim that the District Court of Tulsa County acquired jurisdiction over Dr. Molina as a result of long-arm service on Dr. Molina in Harris County, Texas. Plaintiff, Kennedy, lived in Oklahoma and was being treated by an Oklahoma doctor. Kennedy's local doctor sent a mole the doctor had taken from Kennedy's skin to defendant, Dr. Freeman, in Dallas, Texas and requested that Dr. Freeman examine it and send the Oklahoma doctor a written report. Dr. Freeman did so but his report was in error. Kennedy claimed that Dr. Freeman's error caused her to develop a malignant melanoma four years later, which caused cancer to spread throughout her body. Kennedy sued Dr. Freeman in federal court in Oklahoma but served him in Texas. The trial court granted Dr. Freeman's motion to dismiss for lack of personal jurisdiction but the Court of Appeals reversed, holding that Dr. Freeman's agreement to render his diagnosis through the mail to Kennedy's Oklahoma doctor subjected Dr. Freeman to personal jurisdiction by Oklahoma courts.

¶ 8 We have found no case that has followed *Kennedy* under circumstances similar to those present here. In fact, every case that we have found that had facts similar to the facts of this matter has distinguished *Kennedy: Vogel v. Bellows–Blakely,* 1999 WL 270330, Slip Op. at 4 (Tex.App.—Dallas) ("... in Kennedy the patient was being treated in ... Oklahoma at the time Freeman provided his service ..."); *Prince v. Urban,* 49 Cal.App.4th 1056, 1061, 57 Cal. Rptr.2d 181, 184 (1996) ("the doctor-patient relationship [in *Kennedy*] was, essentially, a mail-order one"); *Bradley v. Mayo Foundation,* 1999 WL 1032806, Slip Op. at 10 (E.D.Ky.) ("[In *Kennedy*] ... plaintiff never traveled for treatment to the non-forum state.").[2]

■ ¶ 9 Here, Ms. Vance traveled to Texas for treatment by Dr. Molina. As Ms.

---

2. Although *Kennedy* is clearly distinguishable from the case at bar, we expressly reject the reasoning of a case cited in the *Kennedy* opinion, *McGee v. Riekhof,* 442 F.Supp. 1276 (D.Mont. 1978), which bears more factual similarity to the

case at bar than does *Kennedy.* In *McGee,* plaintiff, a Montana resident, traveled to Utah for an eye operation. After the operation, plaintiff returned home and sometime later returned to work on his doctor's advice. Complications de-

Vance sought treatment in Texas it is reasonable to expect her personal representative to return there to bring suit for conduct arising out of that treatment in Texas. The discussions between Ms. Vance and her Oklahoma doctors and Dr. Molina and his staff were ancillary to the surgeries Dr. Molina performed on Ms. Vance in Texas. We hold that these incidental discussions should not subject Dr. Molina to jurisdiction in Oklahoma courts.

¶ 10 It is obvious that specialty care involves followup care. In fact, a doctor has an ethical obligation to render such care and failure to do so would be an abandonment of his patient. Thus, requiring a nonresident physician to defend a lawsuit in a forum to which the doctor's only connection is followup care rendered to a patient who came to the doctor in the doctor's home state for primary treatment would be unfair and we decline to impose such a requirement on Dr. Molina here. Further, plaintiff's cause of action can be enforced in Texas where Dr. Molina operated on Ms. Vance. Thus, we conclude that the acts of Dr. Molina in Oklahoma and the consequences of those acts were too insubstantial to establish the "minimum contacts" between Dr. Molina and the state of Oklahoma required by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

¶ 11 OPINION OF THE COURT OF CIVIL APPEALS VACATED, JUDGMENT OF THE DISTRICT COURT AFFIRMED.

¶ 12 HARGRAVE, C.J., HODGES, LAVENDER, OPALA, SUMMERS, BOUDREAU, and WINCHESTER, JJ., concur.

¶ 13 KAUGER, J., dissent.

veloped after plaintiff returned to work and he sued his Utah doctor. The court held that personal jurisdiction over the Utah doctor attached in Montana because the doctor had rendered his advice to return to work in a telephone conversation with plaintiff. *McGee,* however, has been criticized by other courts that have considered it. See, for example, *Bradley v. Mayo Foundation,* 1999 WL 1032806, Slip Op. 9, note 11 (E.D.Ky.)

("*McGee* ... distinguished or criticized by many other courts"); *Vogel v. Bellows–Blakely,* 1999 WL 270330, Slip Op. at 4 (Tex.App.—Dallas); and Prince v. Urban, 49 Cal.App.4th 1056, 1064, 57 Cal.Rptr.2d 181, 186 (1996) ("We decline, however, to follow *McGee,* because its analysis is in several respects not persuasive"). For the reasons set forth in our opinion, we, too, decline to follow *McGee.*