2005 OK 89

**Randle LEE and Janell Duncan, Husband and Wife, Plaintiffs/Appellants,**

v.

**Julie BATES and Postic & Bates, P.C., a professional corporation, Defendants/Appellees.**

No. 100,706.

Supreme Court of Oklahoma.

Dec. 13, 2005.

Richard M. Fogg, Fogg, Fogg & Handley, El Reno, OK, for appellants.

Elizabeth R. Sharrock, Edmond, OK, and Harry A. Woods, Jr., Crowe & Dunlevy, Oklahoma City, OK, for appellees.[1]

OPALA, J.

¶ 1 The question presented on certiorari is whether COCA erred when it affirmed the trial judge's order dismissing the cause for improper venue. We answer in the affirmative.

## I.

### ANATOMY OF THE LITIGATION

¶ 2 Randle and Janell Duncan (plaintiffs or Duncans), residents of Canadian County, are former clients of Julie Bates (Bates), of the law firm of Postic and Bates (defendants, firm or Postic & Bates), whose office is located in Cleveland County. On or about 23 February 2003 Janell Duncan, while at home in Canadian County, contacted Bates, at her home in Cleveland County, concerning a possible adoption she understood Bates to be handling. Janell Duncan expressed an interest in pursuing the adoption, and Julie Bates explained during the phone conversation the terms of the attorney-client contract.[2] The agreement for adoption-connected services was signed the next day in Oklahoma County, and the money due under the contract was subsequently paid by the Duncans to

---

1. Identified herein are only those counsel for the parties whose names appear on the certiorari petitions.

2. These events, according to the Duncans', took place the same day during a second phone conversation that was initiated by Bates in response to Janell Duncan's telephone call. According to the Duncans' petition and briefs, Bates attempted

to fax Janell Duncan a copy of the agreement immediately after the phone conversation, but the facsimile attempt failed.

COCA's opinion notes "[t]he parties entered into a contract over the telephone for Bates to represent Plaintiffs in an adoption proceeding." COCA opinion, p. 2.

Bates in Oklahoma County.[3] Bates' fee was $20,000, $18,000 of which was non-refundable.[4] She performed legal services, consisting of document preparation and telephone conversations (all done in Cleveland County), as well as of filing an adoption case in Oklahoma County.

¶3 Following the birth of the child, its parents decided not to place the infant for adoption. The Duncans allege Bates represented to them the child was indeed available for adoption and all preliminary consents were in place, although she had not ascertained the truth of her assertions.[5] They brought suit in Canadian County against the law firm of Postic & Bates and Bates in her individual capacity alleging 1) breach of fiduciary duty, 2) negligence, 3) false representation to induce them into a contract, and 4) intentional infliction of emotional distress. The defendants (including Bates in her individual capacity) challenged the court's jurisdiction and also moved to dismiss the action for improper venue under the provisions of 12 O.S. § 134 [6]—the venue statute governing suits against corporations. The trial judge sustained their motion and dismissed the suit. The Duncans appealed from this ruling in accordance with Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S.2001, Ch. 15. App., which deals with procedure for accelerated review. COCA affirmed the trial court's order. The Duncans' petition for rehearing was denied. They sought certiorari.

## II.

### STANDARD OF REVIEW

¶4 The dispositive issue to be decided is one of law. It calls for a legal conclusion which is governed by a *de novo* standard of appellate review.[7] When reexamining a trial court's legal rulings, an appellate court exercises plenary, independent and non-deferential authority.[8]

## III.

### COCA'S OPINION AND THE PARTIES' ARGUMENTS ON CERTIORARI

¶5 COCA's opinion notes neither party addressed itself to what is proper venue of an

3. Ten thousand ($10,000) was due upon signing the agreement and another $10,000 was due four days later. Eighteen thousand was considered to be "fully earned" and non-refundable. As part of the adoption process, the Duncans also provided the mother with a vehicle which they delivered to Bates' Cleveland County office.

4. Although the Duncans' petition claimed Bates' fee in this cause was unconscionable and a violation of the Rules of Professional Responsibility, the trial judge's order did not address this issue. Neither did the Duncans raise this issue on certiorari.

5. The Duncans contend that at the time they entered into the agreement with Bates for the adoption, she had not discussed the proposed adoption with the unborn child's father (husband of the mother). (petition, p. 3) The terms of 10 O.S. § 75 require the father's consent for the adoption of a minor born in wedlock. Where parents are married, neither may execute valid consent to an adoption prior to the infant's birth. *Supra*. Although neither parent here may give valid consent to the adoption before the baby's birth in accordance with the § 75 provisions, the Duncans urge that Bates' made false, material representations that both mother and father had agreed to complete the adoption.

Before bringing this suit, the Duncans made a demand upon the defendants for a refund of all monies paid to the latter. The defendants refused. They did return $2,000.00 of an attorney's fee, a $1,000.00 yet unpaid fee to Jack Petty, $1,600.00 for the Tulsa Heritage Family Services bill, and $3,977.59 of unexpended expenses for the mother.

6. The terms of 12 O.S. § 134 provide:

"An action, other than one of those mentioned in first three sections of this article, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or be summoned, *or in the county where the cause of action or some part thereof arose*, or in any county where a codefendant of such corporation created by the laws of this state may properly be sued." (emphasis supplied)

7. *Booth v. McKnight*, 2003 OK 49, ¶12, 70 P.3d 855, 860.

8. *Booth, supra* note 7, at ¶12 at 860 (citing *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶14, 859 P.2d 1081, 1083). ("Issues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary, independent, and non-deferential authority to reexamine a trial court's legal rulings."). *Supra*. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

action against an individual.[9] Its decision deals solely with the provisions of § 134 which address available venue in a suit brought against a domestic corporation. We choose to confine ourselves, as did COCA, to the issue raised on certiorari.[10] COCA's opinion—affirming the nisi prius decision that dismisses the action for improper venue—relies upon *Guaranty State Bank of Tishomingo v. First Nat'l Bank of Ardmore*[11] and *Perkins v. Perkins*.[12] These cases teach "[a] cause of action arises, in the nature of things, at the time when and place where the act is done or omitted which gives the plaintiff the cause of complaint."[13] COCA concludes Bates conducted no activities concerning the case in Canadian County. All of her acts or omissions about which the Duncans complain took place in Cleveland or Oklahoma County. COCA also rejected any notion that the place where consequences are felt or damages occur may provide a basis for laying venue under § 134.[14]

¶ 6 The Duncans urge COCA's analysis, in its effect, ignores the § 134 language that permits venue to lie against a corporate defendant "in the county where the cause of action **or any part thereof arose**"[15] (emphasis ours). According to the Duncans the legislature intended to include within a plaintiff's permissive venue choices all counties where any element of a cause of action arose.

This is clear from the inclusion in the legislative text of the phrase "or any part thereof." They assert COCA's ruling, as it impacts false representation, assumes that a cause of action must be deemed complete "where and when" the false publication is uttered. It, in essence, gives life to a fraud action **before any communication to the aggrieved party occurs.** An allegation of false representation, according to the Duncans, is actionable **only after** it is communicated to and relied upon by the recipient and after the recipient incurs damages as a result of reliance on the misrepresentation. Because the Duncans heard the information while in Canadian County, they contend venue is proper there. Postic & Bates urge COCA's opinion is consistent with Oklahoma's venue jurisprudence.[16]

## IV.

### A CAUSE OF ACTION FOR FALSE REPRESENTATION AGAINST A DOMESTIC CORPORATION WILL LIE UNDER THE PROVISIONS OF § 134 IN THE COUNTY WHERE THE ALLEGEDLY FALSE UTTERANCE WAS HEARD

¶ 7 The question of where a cause of action for inducing one to enter into a

---

9. COCA opinion, p. 3.

10. The gist of the Duncans' cause of action is misrepresentation. They seek damages, compensatory and exemplary, for false representations that induced them to enter into a contract for legal services. False representation is an element of all causes of action which plaintiffs are attempting to identify as the basis for their demands.

11. *Guaranty State Bank of Tishomingo v. First Nat. Bank of Ardmore*, 1926 OK 1016, 260 P. 508.

12. *Perkins v. Perkins*, 1975 OK CIV APP 55, 541 P.2d 379.

13. *Guaranty, supra* note 11, at ¶ 11 at 510; *Perkins, supra* note 12, at ¶ 7 at 381.

14. For this conclusion COCA cited *Barnes v. International Business Machines Corp.*, 212 Mich. App. 223, 537 N.W.2d 265, 266 (1995).

15. For the complete text of § 134 see *supra* note 6.

16. Postic & Bates' certiorari brief urges those cases cited by COCA. See *supra* notes 11 and 12. They also cite to *Doughty v. Martin*, 1973 OK 40, ¶ 28, 509 P.2d 122, 125 (suit for wrongful death was prohibited in county where no alleged breaches of duty occurred); *Vance v. Molina*, 2001 OK 60, ¶ 10, 28 P.3d 570, 574 (ancillary telephone calls between a Tulsa woman and a Texas physician were insufficient to establish minimum contacts and confer jurisdiction over the physician in an Oklahoma court for a cause dealing with medical malpractice); *Maytubby v. State*, 1983 OK CR 91, ¶ 6, 665 P.2d 849, 851–52 (venue lies where a fraudulent statement was made that in turn induced the complaining party to execute the contracts). We note the court in *Maytubby* held where the applicable venue statute provides that prosecution of an offense committed partly in one county, and partly in another, may be had in either county, the trial court did not err in holding venue to be proper in

contract by false representation will lie against a domestic corporation under the provisions of § 134 is one of first impression. Whether venue of this action could have been laid in Cleveland or Oklahoma County is not before us. Of sole concern is whether venue was properly laid in Canadian County. Our resolution of this dispositive question requires an answer to the query whether "any part" of the Duncans' cause of action for false representation may be deemed to have arisen in Canadian County.

¶ 8 The Duncans' claim for damages from a breach of contract by false representation has a tortious element. False communication is transient in nature. To establish liability in this cause the Duncans must prove all elements of their cause of action.[17] They urge the following two indispensable elements[18]—1) their reliance upon the alleged false representation made to them by Bates and 2) the injury they incurred because of this reliance—both occurred in Canadian County. The critical question to be answered is hence where the parties are not in the same location, **is the element of false representation complete by proof of its utterance or by proof of its utterance and receipt by the hearer.** If the former is true,

venue would lie in the county where the communicant uttered the statements. If the latter is correct, venue is proper in the county where the utterance is heard by its recipient.

■ ¶ 9 The legal term of art "cause of action" is historically multi-faceted. Over time it has come to denote legal harm for which one is entitled to redress in a judicial proceeding.[19] To be part of a cause of action, the act relied on for laying venue must be one of the facts which, by the substantive law of the state, comprises the cause of action.[20] COCA's analysis of where the cause of action arose—as well as that made at nisi prius—focuses on the "locus of legal services" provided. COCA noted that all legal services performed by Bates occurred in Cleveland or Oklahoma County. **The Duncans are not seeking to recover for legal services but rather are suing for misrepresentation.** The focal point of inquiry here must hence be the "locus of the misrepresentation."

¶ 10 Plaintiffs cite *Carroll v. State*[21] for support of their position that a false representation has not occurred until a communicant's words are heard by another. *Carroll* teaches that venue in an action for obtaining

---

Carter County (the place where the fraudulent statement was made). *Supra.*

17. The Oklahoma Uniform Jury Instructions (OUJI) provide the elements of liability for false representation.
"In order for [Plaintiff] to recover from [Defendant] on [his/her] claim of deceit, you must find that all of the following have been established:
1. That Defendant made a material representation;
2. That it was false;
3. That Defendant made it when [he/she] knew it was false, or made it as a positive assertion recklessly, without any knowledge of its truth;
4. That [Defendant] made it with the intention that it should be acted upon by Plaintiff;
5. That Plaintiff acted in reliance upon it; and
6. That Plaintiff thereby suffered injury."

18. For all of the elements comprising false representation, see *supra* note 17.

19. The legal term of art "cause of action" originally was to serve as a synonym and substitute for one's "right to a writ" under any form of action—the legal parlance in use before the English pleading system was abolished in the mid-nineteenth century. Koffler and Reppy, *Handbook of Common Law Pleading 59*, West Publishing Co. (1960).

20. The definition of when a cause of action arises used by COCA originated in *Guaranty, supra* note 11, a cause also dealing with what is now § 134. *American–First Title & Trust Co. v. First Federal Savings & Loan Association of Coffeyville, Kansas,* 1965 OK 116, ¶¶ 14–17, 415 P.2d 930, 934–35, another § 134 case, provides several references to definitions of the term "cause of action." *Chesapeake & Ohio Railroad Co. v. Dixon,* 179 U.S. 131, 139, 21 S.Ct. 67, 70, 70 45 L.Ed. 121 ("The cause of action manifestly comprised every fact which plaintiff was obliged to prove in order to obtain judgment, or, conversely, every fact which defendants would have the right to traverse."); *Consolidated Fuel Company v. Gunn,* 1923 OK 71, ¶ 15, 213 P. 750, 752, 89 Okl. 73 ("The act relied on for venue must be one of the facts which, under the substantive law, constitute the cause of action.")

21. *Carroll v. State,* 1959 OK CR 124, 347 P.2d 812, dealt with a multi-venue analysis of the criminal offense of false representation. The terms of 22 O.S. § 124 provide:
"When a public offense is committed, partly in one county and partly in another county, or the act or effects thereof, constituting or requisite to the offense, occur in two of more counties, the jurisdiction is in either county."

money by false pretenses (a criminal offense) is proper where the false statements were published or where the pamphlets were received.[22] The court noted that, "[a]s a libel and slander has no life until it is published, the false pretense has no existence until it is communicated to the proposed victim."[23] False pretenses have not been made until they are received by the aggrieved hearer.[24] Although there is no extant Oklahoma civil jurisprudence to guide us in today's decision, other states when confronted with causes where venue was at issue and the parties were in different localities at the time of the alleged misrepresentation have generally held that venue may be fixed by the location of the listener.[25]

¶ 11 We are persuaded that it is the locus of the misrepresentation's occurrence that is decisive of today's cause. Here the allegedly false statement by Bates was uttered via a telephone conversation in one county and transmitted to Janell Duncan who was present in another.[26] **That the critical words were spoken by Bates while she was in Cleveland County is not conclusive on the venue issue.** A false representation is not complete until the speaker's words have been received and relied upon by the hearer. Bates' words are without legal effect to establish the Duncans' claim until they were heard by Janell Duncan in Canadian County. Janell Duncan heard Bates' statements while at her residence in that county. She indicated to Bates her interest in proceeding with the potential adoption. The Duncans relied on the information received and the next day

signed a non-refundable contract with Bates for legal services to be performed. Part of plaintiffs' cause of action clearly occurred in Canadian County. Applying the terms of § 134 to the claim here, we must hold that a part of the cause of action for false representation arose in Canadian County where it was heard. Venue may hence be correctly laid in that county.

## V.

## SUMMARY

¶ 12 In a cause of action for damages from false representation against a domestic corporation venue may be laid in the county where the alleged false utterance was heard. The terms of § 134, which govern today's venue controversy, provide that an action against a corporation may be brought "in the county where the cause of action or some part thereof arose, ..." Canadian County, which is the "locus of the misrepresentation," is hence critical to today's analysis and affords venue for the case. A claim for false representation is not complete until the words are heard or otherwise received and relied upon by the aggrieved person. When allegedly false statements are made by an individual whose *locus in quo* differs from that of the hearer, part of the cause of action for false representation can be said to have arisen where the recipient hears the false utterance. In accordance with the terms of § 134 venue may properly be laid in the

---

**22.** *Carroll, supra* note 21 at ¶ 39 at 820.

**23.** *Carroll, supra* note 21 at ¶ 39 at 820.

**24.** *Carroll, supra* note 21 at ¶ 39 at 820.

**25.** See *Hyman Farm Service, Inc. v. Earth Oil & Gas Co., Inc.*, 920 S.W.2d 452, 456 (Tex.Civ.App. 1996) (venue in a seller's fraud claim may be sustained in the county where the words are heard by the person defrauded) (citing *Harshberger v. Reliable–Aire, Inc.*, 619 S.W.2d 478, 482 (Tex.Civ.App.1981) (after finding a telephone call from the defendant to the plaintiff's agents constituted a part of each of the plaintiff's causes of action, the court found venue was properly laid in the county where the plaintiff's agents had been located at the time of the call) and *Miller v. Kendall*, 804 S.W.2d 933, 943 (Tex.Civ.App.1990)

(when actionable communications are made by telephone calls to the county of suit venue is properly laid in that county)); *Hayter v. Hudgens*, 236 S.W. 232, 234 (Tex.Civ.App.1921) (a defendant speaking over the telephone to the plaintiff located in another county committed fraud in the county in which the plaintiff was located); See also *Anthony v. Forgrave, P.C.*, 126 Mich.App. 489, 337 N.W.2d 546, 548 (1983) (a plaintiff's claim for wrongful death based on medical malpractice arose in the county where the medical advice was received over the telephone, not the county where the doctor was speaking) (citing *Harshberger and Hayter, supra* ).

**26.** This query is not unlike the metaphysical conundrum credited to Bishop Berkley—when a tree in the forest falls and no one is there to hear it, does it make a sound?

county where the recipient was present at the critical time.

¶ 13 On certiorari previously granted upon the Duncans' petition, the Court of Civil Appeals' opinion is vacated and the trial court's order reversed; the cause is remanded to the trial court for further proceedings to be consistent with today's pronouncement.

¶ 14 WATT, C.J. and LAVENDER, HARGRAVE, KAUGER, EDMONDSON and COLBERT, JJ., concur.

¶ 15 WINCHESTER, V.C.J. and TAYLOR, J., dissent.