2012 OK 93

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**N. Franklyn CASEY, Respondent.**

and

**State of Oklahoma ex rel. Oklahoma Bar Association, Complainant,**

v.

**Lawrence A.G. JOHNSON, Respondent.**

**SCBD Nos. 4758, 5748.**

Supreme Court of Oklahoma.

Nov. 13, 2012.

As Corrected Dec. 5, 2012.

3.　12A O.S.2011 § 1–201(20).

4.　Defendant's Response to Plaintiff's Motion for Summary Judgment at 28–37.

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

N. Franklyn Casey, pro se, Tulsa, Oklahoma.

Lawrence A.G. Johnson, pro se, Bixby, Oklahoma.

COMBS, J.

¶ 1 These two matters are treated as companions for purposes of a published opinion only. The one count complaint against Respondent Lawrence A.G. Johnson alleges misconduct perpetrated in concert with Respondent N. Franklyn Casey. That alleged misconduct generated two of the three counts in the Casey complaint. A separate count arising from a separate legal matter is asserted against Respondent Casey only. The two matters were assigned to this office June 18, 2012.

### STANDARD OF REVIEW

¶ 2 In a bar disciplinary proceeding this Court exercises exclusive original jurisdiction arising from its nondelegable power to regulate the practice of law. *State ex rel. Okla. Bar Ass'n v. Minter*, 2001 OK 69, ¶ 7, 37 P.3d 763, 768. "In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct charged, the court conducts a full-scale, nondeferential, de novo examination of all relevant facts, in which the conclusions and recommendations of the trial panel are neither binding nor persuasive." *State ex rel. Okla. Bar Ass'n v. Clausing*, 2009 OK 74, ¶ 4, 224 P.3d 1268, 1272 (citations omitted). "The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take other action it deems appropriate." Rules Governing Disciplinary Proceedings (RGDP), Okla. Stat. tit. 5, app. 1–A, Rule 6.15(a) (2011).

### THE TRIAL OF THIS MATTER BEFORE THE PROFESSIONAL RESPONSIBILITY TRIBUNAL

¶ 3 An extensive trial was conducted concerning the actions of both Respondents be-

fore the Professional Responsibility Tribunal (PRT). It included testimony from two of the trial judges in the litigation that gave rise to the complaints against Respondents and numerous exhibits that included depositions and transcripts associated with that litigation. The trial became focused on the ultimate success of the underlying litigation. The General Counsel and the Respondents used the trial courts' determinations as to the merits of the litigation and those courts' view of Respondents' ethical obligations to prosecute and defend the complaints.

¶ 4 The focus of the trial before the PRT should not have been whether a trial court was correct in its holdings on the merits of the litigation or on the trial courts' opinions concerning ethical violations by the parties or their counsel. The beliefs, opinions, and findings of a trial court concerning a lawyer's ethical obligations are not persuasive and no precedential value is afforded to them in a bar disciplinary proceeding. This Court alone will "[e]exercise an exclusive, original and nondelegable jurisdiction to regulate the practice of law." *State ex rel. Okla. Bar Ass'n v. Scroggs*, 2003 OK 21, ¶ 2, 70 P.3d 821, 824. The focus of the trial should have remained on whether there was clear and convincing evidence to demonstrate the allegations in the complaints.

¶ 5 The PRT found that the General Counsel had established every violation asserted in the complaints against Respondents Johnson and Casey by clear and convincing evidence. The PRT increased the discipline recommended by the General Counsel for Respondent Johnson from a public censure to a six-month suspension. The PRT's recommendation as to Respondent Casey was disbarment; the General Counsel had recommended two years and a day or disbarment.

### THE DECLARATORY JUDGMENT ACTION

¶ 6 Casey represented Peggy Rucker in her divorce action against Dr. Frank Tomecek filed in March of 2004 in Tulsa County District Court. The couple had lived together from approximately 2000 until 2003. During that time, they executed a prenuptial

agreement, filed joint tax returns, and executed estate planning documents. The lawyer who represented Dr. Tomecek in the divorce action, Michael King, had previously represented the couple in their estate planning. He was therefore aware that from approximately 1990 until 2000 Rucker had resided with Patrick Atkinson and that they had held themselves out as husband and wife in tax returns, health insurance documents, and in other regards.

¶ 7 Casey became concerned that Dr. Tomecek would urge that Rucker remained in a common law marriage with Atkinson and therefore she could not be in a common law marriage with Dr. Tomecek. Casey devised a strategy to deal with the anticipated defense. He conferred with his long-time friend, Respondent Johnson, concerning the possible allegation of a common law marriage between Atkinson and Rucker. Casey persuaded Johnson that a declaratory judgment as to Atkinson's marital status in relation to Rucker would eliminate a defense to a common law marriage between Dr. Tomecek and Rucker. It would also protect Atkinson and possibly his estate from any claim that a common law marriage had existed with Rucker.

¶ 8 Johnson sent lawyer Robert Briggs to meet with Atkinson and determine whether he ever intended to be married to Rucker. Briggs did so and discovered that Atkinson and Rucker had held themselves out as husband and wife, but that neither intended to be married. Briggs referred Atkinson to Johnson who filed the friendly suit as a declaratory judgment action in Rogers County where Atkinson resided. Johnson paid for this action with a check drawn upon the operating account of N. Franklyn Casey. The action was filed ostensibly to correct the filing of joint tax returns by Atkinson and Rucker, but ultimately to obtain a determination that there had been no marriage. Johnson did not seek Atkinson's specific approval for the friendly suit, but Atkinson ratified Johnson's actions a few days later.[1] Casey did not answer the declaratory judgment petition on Rucker's behalf and Johnson eventually obtained a summary judgment which determined there had been no marriage between Atkinson and Rucker.

¶ 9 More than a year later, Dr. Tomecek sought to vacate the judgment asserting that he was a necessary party to the action between Atkinson and Rucker and that he had not been given notice of the action.[2] He also filed a motion to disqualify Casey, Briggs, and Johnson from further representation in the matter alleging ethical violations and fraud. The trial court held a hearing and disqualified the three lawyers based on its findings of violations of specified Rules of Professional Conduct[3] and the fact that the lawyers had become witnesses concerning the motion to vacate. The order was limited to disqualification and it did not address the motion to vacate. The declaratory judgment finding no marriage between Atkinson and Rucker was never vacated and it became binding on Dr. Tomecek upon his successful intervention in the matter. The disqualification order was affirmed by the Court of Civil Appeals and this Court denied certiorari review.

1. Additionally, Atkinson executed an affidavit that was attached to Rucker's Motion for Summary Judgment which described his relationship with Rucker and stated that he never intended to be married to her.

2. Atkinson and Rucker brought an original proceeding in this Court in 103,066 to prohibit the trial court from taking evidence from Dr. Tomecek concerning the motion to vacate. This Court declined to assume original jurisdiction.

3. Specific violations of the Oklahoma Rules of Professional Conduct were found as to each of the three attorneys. The trial court determined that Casey and Johnson violated Rule 3.3 which requires candor to the court and that they violated Rule 1.7(a) and (b). The trial court went on to find the following additional violations:

7.3 (a) and 7.3(c)(2) Casey and Briggs.
4.3 Briggs
8.4 (a) and 8.4(d) Casey, Briggs, and Johnson (c) as to misrepresentation as to Johnson specifically regarding the allegations of the petition.
3.7 Casey, Briggs, and Johnson.
Here, the Court finds that the testimony of all three attorneys would be required and that the same would be adverse to that of their clients in the proceeding before this Court.
4.2 Briggs
1.7 (a) and (b) Casey and Briggs
5.1 (c)(1)
1.16 (a)(1) Casey, Briggs, and Johnson

¶ 10 In April, 2010, the District Court of Rogers County assessed attorney fees as a sanction against Johnson and Casey in the amount of $23,427.30. The court found that the declaratory judgment action constituted a frivolous claim asserted in bad faith because there was no actual case or controversy between Atkinson and Rucker and that Dr. Tomecek was a necessary party to the action. Casey paid the attorney fees and negotiated a settlement of his appeal of the order.

¶ 11 The General Counsel initiated complaints against Johnson and Casey regarding this litigation. The Complaint against Johnson alleged violations of the following Oklahoma Rules of Professional Conduct (ORPC), Okla. Stat. tit. 5, ch. 1, app. 3–A (2011): Rule 1.6(a) (client confidences), Rule 3.1 (filing a frivolous action), Rule 3.3 (disclosure of client fraud or crime), Rule 8.4(a) (violation of a rule of conduct), Rule 8.4(c) (dishonesty, fraud, deceit, or misrepresentation), Rule 8.4(d) (conduct prejudicial to the administration of justice), and Rule 3.7 (lawyer as witness). The complaint against Johnson also asserted a violation of Rule 1.3 of the Rules Governing Disciplinary Proceedings (RGDP), Okla. Stat. tit. 5, ch.1, app. 1–A (2011) (act contrary to a prevailing standard of conduct).

¶ 12 The amended complaint against Casey asserted violations of ORPC 1.5 (Fees) ORPC Rule 1.15 (safekeeping property) ORPC Rule 1.7 (conflict of interest), Rule 3.3(a)(1) (false statement of fact or law to a tribunal), Rule 3.3(a)(2) (failure to disclose fraud or crime of client), Rule 3.3(d) (disclosure of all material facts in an ex parte proceeding), Rule 4.3 (disclosure of lawyer's interests to an unrepresented person), and Rule 5.1(c)(1) (duty to supervise another lawyer). In addition, the complaint against Casey asserted the ORPC rule 8.4(a) and RGDP Rule 3.7 and Rule 1.3 violations that were asserted against Johnson.

¶ 13 The appropriateness of the declaratory judgment action brought on behalf of Atkinson and Rucker must be measured by the law of common law marriage. Oklahoma recognizes both ceremonial and common law marriage.

[T]o constitute a valid common-law marriage it is necessary that there should be an actual and mutual agreement to enter into the matrimonial relation, permanent and exclusive of all others, between parties capable of making such a contract, consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties and obligations.

*Vann v. Vann,* 1939 OK 495, ¶ 21, 186 Okla. 42, 96 P.2d 76, 79. Oklahoma has long recognized that such an agreement may arise through the parties' declarations, admissions, or conduct; but no particular form of expression is required, *Reaves v. Reaves,* 1905 OK 32, ¶ 8, 15 Okla. 240, 82 P. 490, 492, and thus, the mutual agreement may be express or implied. *See, In re Graham's Estate,* 1934 OK 674, ¶ 0, 169 Okla. 568, 37 P.2d 964 (Syl. No. 1 by the Court).

¶ 14 Lawful marriage, whether ceremonial or common law:

Creates both a relation and a status. The marriage relation may be severed by abandonment of one of the spouses or by mutual agreement to live separate and apart. The marital status can be terminated only by decree of a court of competent jurisdiction or by death of one of the parties.

*Red Eagle v. Cannon,* 1945 OK 172, ¶ 18, 198 Okla. 330, 177 P.2d 841, 845. In other words, there is no common law divorce. A lawful marriage ends only through death or judicial decree. Thus, when two parties cohabit and hold themselves out in certain respects to be husband and wife, but neither party intended to be married, a declaratory judgment action is a viable vehicle for establishing that (1) no marriage occurred, (2) no divorce action is required, and (3) each party is able to legally marry another.

¶ 15 A declaratory judgment action is the method Atkinson and Rucker utilized to establish that they had never entered into a common law marriage. A legal determination of that status would establish that any subsequent ceremonial or common law marriage would not constitute bigamy and the estates of Atkinson and Rucker would be protected from potential claims upon a party's death. There is nothing unethical per se in such an approach. The trial court determined that there had been no marriage be-

tween Atkinson and Rucker. That determination was not vacated and it became binding on Dr. Tomecek as a result of his intervention in the action. The trial court felt that the attorneys involved in this action had not been truthful and did not divulge the divorce action in Tulsa County.

¶ 16 However, this Court's plenary review of the facts and law concerning this matter reveals that Johnson violated Oklahoma Rules of Professional Conduct (ORPC), Okla. Stat. tit. 5, ch. 1, app. 3–A (2011): Rule 1.6(a) (client confidences), Rule 3.1 (filing a frivolous action), Rule 3.3 (disclosure of client fraud or crime), Rule 8.4(a) (violation of a rule of conduct), Rule 8.4(c) (dishonesty, fraud, deceit, or misrepresentation), Rule 8.4(d) (conduct prejudicial to the administration of justice), and Rule 3.7 (lawyer as witness). The complaint against Johnson also asserted a violation of Rule 1.3 of the Rules Governing Disciplinary Proceedings (RGDP), Okla. Stat. tit. 5, ch.1, app. 1–A (2011) (act contrary to a prevailing standard of conduct). The complaint also shows that Casey violated the same as violations of ORPC Rule 1.7 (conflict of interest), the complaint also reveals violations Rule 3.3(a)(1) (false statement of fact or law to a tribunal), as well as violations of Rule 3.3(a)(2) (failure to disclose fraud or crime of client), Rule 3.3(d) (disclosure of all material facts in an ex parte proceeding), as well as Rule 4.3 (disclosure of lawyer's interests to an unrepresented person), and also Rule 5.1(c)(1) (duty to supervise another lawyer).

¶ 17 Johnson and Casey violated the trust of their respective clients by making them potentially vulnerable to the possible adverse consequences of their admissions concerning their filing of joint tax returns. The assertions, made by Johnson on behalf of Atkinson in the petition and Casey's participation in the formulation of the arguments, were much more than what was needed to establish that the parties never intended to be married. Such statements violated the trust each client placed in a lawyer to resolve the issue of marital status while protecting their interests. **This violation is particularly egregious as to Johnson who did not speak to Atkinson before filing the petition on his behalf.** Even though Atkinson later ratified the petition, Atkinson was not presented with the opportunity to approve its assertions in advance of the filing.

## THE GRIEVANCE BY A LAW FIRM AGAINST RESPONDENT CASEY

¶ 18 In 1996, Linda Fite hired attorney Chad Richardson to file a civil action on behalf of her daughter, a mentally incompetent person who resided at the Lake Drive Nursing Home in Okmulgee, Oklahoma. Richardson filed a petition in Okmulgee County District Court alleging that the spouse of a former employee of the nursing home had raped her. The petition included the words "Attorney Lien Claimed." In February, 1997, Linda Fite was appointed guardian of her daughter by the District Court of Tulsa County.

¶ 19 On July 16, 1997, Fite fired Richardson and hired the law firm of Lester, Loving and Davies (LL & D) to pursue the action against the nursing home under a contingency fee agreement. LL & D filed a Second Amended Petition in the nursing home action endorsed with the words "Attorney Lien Claimed." LL & D did not submit the fee agreement for the approval of the guardianship court. Fite fired LL & D for cause in January, 1999.

¶ 20 In February, 1999, Fite hired Respondent Casey of the firm Casey and Jones. Casey obtained approval of his contingency fee contract from the guardianship court in Tulsa County. In approximately March, 2000, Casey brought in the firm of Lloyd & Lloyd as co-counsel with an oral agreement to split the fee.

¶ 21 In August, 2000, a settlement of $650,000 was reached with the defendants in the nursing home litigation. Casey and Lloyd & Lloyd had discussions with a lawyer from LL & D which indicated that approximately $30,000 in costs had been incurred. Casey filed an application with the guardianship court for approval of the settlement and distribution of its proceeds. In that application, Casey requested a payment of $30,000 to LL & D to settle its "doubtful and disput-

ed claim." Casey's assertion was based on his belief that LL & D had not perfected its attorney lien and that its contract with Fite was unenforceable for lack of its approval by the guardianship court. **No notice of the settlement approval request in the guardianship court was provided to LL & D.**

¶ 22 The guardianship court approved the settlement distribution plan by which $364,000 was placed into exempt property to permit the ward to continue to receive government disability payments. Additionally, the order authorized payments of $1,109.13 to attorney Richardson, $150,636.44 to Respondent Casey, $132,283.66 to Lloyd & Lloyd, and provided for tendering a cashier's check in the amount of $30,000 to LL & D as full settlement of its claim.

¶ 23 When LL & D learned of the settlement distribution it moved the guardianship court to vacate its order, arguing that the Okmulgee County District Court was the proper court to approve the settlement. The motion was granted and affirmed on appeal. While the appeal was pending, LL & D sued Fite for breach of contract and sued the insurer seeking to foreclose the lien it claimed on the proceeds. In addition, LL & D sought to interplead the $30,000 cashier's check it had received. The insurer joined Casey and Lloyd & Lloyd as third party defendants for indemnification. Casey posted a $210,000 cash bond.

¶ 24 The Okmulgee County District Court determined that LL & D had a valid lien and awarded $104,000 in attorney fees and $29,000 in costs. The decision was affirmed on appeal. At some point, LL & D filed a grievance against Casey and the General Counsel's office brought a complaint.

██ ¶ 25 The complaint against Casey urges he violated the following Rules of Professional Conduct: Rule 1.5 (reasonableness, basis, and division of attorney fees), Rule 1.15(a),(b), & (c) (safekeeping of funds), Rule 3.1 (meritorious claims and contentions), Rule 3.3(a)(1) (false statements to tribunal), Rule 3.3(a)(4) (failure to disclose client fraud), Rule 3.3(d) (failure to inform tribunal of material fact), Rule 8.4(a) (violation of a rule of professional conduct), Rule 8.4(c) (fraud), and Rule 8.4(d) (conduct prejudicial

to administration of justice). In addition, the complaint alleged Casey violated RGDP Rule 1.3 (jurisdiction over acts contrary to standard of conduct).

¶ 26 The complaint alleges numerous ORPC violations concerning Casey's representation of Fite. However, this Court's independent and nondeferential review of the trial transcripts, exhibits, and the briefs of the parties demonstrates clear and convincing evidence of a violation of two rules.

¶ 27 Under the version of ORPC Rule 1.15(b) & (c) in effect at the time of Respondent Casey's actions, he was required to comply with the following requirements for the safekeeping of property:

> (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

> (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

Okla. Stat. tit. 5, ch. 1, app. 3–A (Supp.2007). A comment to Rule 1.15 provided:

> Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client, and accordingly may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party.

This Court explained and applied Rule 1.15(b) and (c) in *State ex rel. Okla. Bar Ass'n v. Taylor*, 2000 OK 35, 4 P.3d 1242:

> Rule 1.15 requires that lawyers who are entrusted with the property of clients and of third parties must hold that property with the care required of a "professional fiduciary." The basis for the rule is the lawyer's fiduciary obligation to safeguard trust property and to segregate it from the lawyer's own property, and not to benefit personally from its possession. Upon receiving funds in which a client (or third party) has an interest, a lawyer is required by ORPC Rule 1.15(b) to notify promptly the interested party. This notification allows the client (or third party) (a) the opportunity for an accounting and, if necessary, (b) the opportunity to dispute the respective interests before disbursement is made of the funds. Rule 1.15(c) requires an attorney to keep separate a client's (or third party's) funds in which the lawyer also has an interest until a proper accounting and severance of interests can be made or until any dispute over the quantum of interests is resolved.

*Taylor* at ¶ 16, 4 P.3d at 1249, 1250 (footnotes omitted) (emphasis added).

¶ 28 In Taylor, the lawyer had unilaterally determined that his lien was superior to the lien asserted against a settlement check by a doctor. This Court held that the lawyer violated Rule 1.15 by his failure to notify promptly the medical provider of the lawyer's receipt of the settlement check. *Taylor* at ¶ 18, 4 P.3d at 1251.

¶ 29 In this matter, Respondent Casey essentially took upon himself the task of arbitrating the dispute concerning the attorney lien that LL & D claimed. He determined both the validity and priority of competing attorney liens and sought distribution accordingly. He did not notify LL & D of his receipt of the settlement check nor did he notify LL & D that he would seek the guardianship court's approval of the settlement distribution. By doing so, he breached his obligation under Rule 1.15(b) and (c) to promptly notify anyone whom he knew to be asserting an interest in the settlement distribution so that person or entity could seek judicial resolution concerning the competing attorney liens.

¶ 30 A lawyer cannot become the sole arbiter concerning the right to settlement proceeds that is a matter for judicial determination following notice to the claim holders. Respondent Casey failed to meet his ethical obligation to see that the interested parties were notified of their need to assert that interest before the trial court.

## THE APPROPRIATE SANCTION

¶ 31 The *Taylor* decision not only articulates the lawyer's obligation in regards to a dispute over ownership of funds being held by the lawyer, Taylor was found to have violated Rule 1.15(b) and (c) and to have violated his duty to supervise lay personnel and timely respond to the Bar's demand for information in the disciplinary proceeding. A thirty-day suspension was imposed. However in *State ex rel. Oklahoma Bar Association v. Schlegel*, 1991 OK 135, ¶ 1, 808 P.2d 671 Schlegel failed to pay a co-counsel his required fee and was disbarred when he converted the money to his own use. Such is the case in the instant action. Casey converted all of the attorney fees to his own use. Casey intentionally circumvented his professional fiduciary duties by going to the guardianship court and filing a frivolous application to approve the settlement and by obtaining an order for him to disburse the funds based on his misrepresentations to Judge Perugino. Casey's actions show his disregard for the legal system in Oklahoma. Casey's actions before the guardianship court were frivolous, ex parte and calculated so as to enable him to misappropriate funds to which Lester, Loving and Davies claimed an interest and were entitled to a legal fee. See also, *State ex rel. Oklahoma Bar Association v. Miskovsky*, 1991 OK 88, ¶ 40–42, 824 P.2d 1090 where Miskovsky was suspended from the practice of law for a period of eighteen months for similar actions.

¶ 32 In this matter, clear and convincing evidence was presented to support Casey's violation of Rule 1.5 and Rule 1.15(b) and (c) concerning the law firm's grievance and a violation of Rule 8.4(d) in the declara-

tory judgment action. Casey's actions in this matter combined with his lack of honesty with the trial court in Rogers County are evidence of his willful disregard for the rules by which all attorneys must abide. Casey's intentional manipulation of the judicial system, which places his client at risk, is an egregious act from which the public must be protected. Respondent Casey remains unremorseful, arguing his actions in the civil proceeding are a "matter of weighing risk versus benefit". (Respondent's Answer Brief at p. 26) Mr. Casey's actions have brought disrepute upon the legal profession and have injured the reputation of all members of the Oklahoma Bar Association. A thorough review of the record reveals suspension from the practice of law for two years and a day is an appropriate sanction for Casey.

 ¶ 33 Johnson's violation of Rule 8.4(d) in the declaratory judgment action was demonstrated by clear and convincing evidence. Johnson has practiced law for over 53 years with no history of discipline from this Court. A six month suspension is the appropriate sanction for Johnson for his acts that were prejudicial to the administration of justice.

## THE IMPOSITION OF COSTS

 ¶ 34 "The appropriateness of assessing costs hinges on whether the professional misconduct charges have been proven by clear and convincing evidence and whether the costs are related to a violation of a rule of professional conduct or disciplinary rule." *State ex rel. Okla. Bar Ass'n v. Albert*, 2007 OK 31, ¶ 27 n. 33, 163 P.3d 527, 538. In this matter the Oklahoma Bar Association has proven all counts against the parties. In this matter, the Bar seeks reimbursement of costs in the amount of $4,513.49 against Casey and $1,181.90 against Johnson. These costs shall be paid not later than ninety days from the date this opinion becomes final.

**RESPONDENT CASEY IS SUSPENDED FROM PRACTICE FOR TWO YEARS AND A DAY, RESPONDENT JOHNSON SUSPENDED FOR A PERIOD OF SIX MONTHS; COSTS IMPOSED.**

1. Title 5 O.S.2011 Ch. 1 App. 1–A, Rule 7.2, Rules Governing Disciplinary Proceedings pro-

VOTE IN SCBD 4758:

TAYLOR, C.J., WATT, WINCHESTER, EDMONDSON, COMBS and GURICH, JJ., concur.

KAUGER, J., concurs in part; dissents in part;

COLBERT, V.C.J., dissents;

REIF, J., not participating.

VOTE IN SCBD 4758:

TAYLOR, C.J., WATT, WINCHESTER, EDMONDSON, COMBS and GURICH, JJ., concur:

KAUGER, J., concurs in part; dissents in part;

COLBERT, V.C.J., and REIF, J., dissent.

KAUGER, J., concurring in part/dissenting in part:

¶ 1 I agree that this is a situation in which discipline is warranted, but I am not sure what discipline to invoke. However, I am again concerned about the procedure that the Bar Association used in the handling of this matter. It agreed with the respondents to allow them to practice law for ten years so that the same case upon which discipline was based could be concluded. This is inexplicable to me. If we are to protect the public, this sort of lingering discipline cannot be allowed.

This is reminiscent of *State of Oklahoma ex rel. Oklahoma Bar Association v. Conrady*, 2012 OK 29, 275 P.3d 133; *State of Oklahoma ex rel. Oklahoma Bar Association v. Maddox*, 2006 OK 95, 152 P.3d 204; *State of Oklahoma ex rel. Oklahoma Bar Association v. Benefield*, 2005 OK 75, 125 P.3d 1191; and *In the Matter of the Reinstatement of Fraley*, 2005 OK 39, 115 P.3d 842.

¶ 2 In *Conrady*, supra, the Bar Association informally handled the disciplinary proceedings and it did not follow the rules. The County Court Clerk failed to comply with 5 O.S.2011 Ch. 1 App. 1–A, Rule 7.2[1] and the

vides:

Bar Association failed to notify us of the attorney's criminal charges.[2] Had the rules been followed and had the Chief Justice been notified, the lawyer would have been suspended from the practice of law immediately and the public would have been protected. Instead, on the lawyer's behalf, a member of the Oklahoma Bar properly notified the OBA of his arrest shortly after it occurred. The lawyer, in a letter to a friend, dated March 9, 2009, wrote:

> Warren self reported to the OBA for me with my permission. Warren made a deal that if I agreed not to practice, the OBA agreed to not suspend my license until further proceedings.

The inference from the record was that he continued to practice law and that he had legal work pending over two years later, at the time his disciplinary hearing was held. This unorthodox procedure not only left the public at risk, it impaired the ability of the lawyer to apply for readmission to the Bar in a timely fashion.

¶ 3 In *Maddox,* supra, the proceeding was delayed more than five years between the former district attorney's indictment and the disciplinary hearing. Had the matter been timely brought, the respondent would have been disbarred and could have been eligible to apply for reinstatement by the time the proceeding reached the Court. Instead, we were asked to impose discipline which should have been imposed much earlier. The Court noted the breakdown in the system stating:

> This does not meet the constitutional requirements of due process, nor of the constitutional right to a speedy trial. Limbo does not maintain the integrity and confidence of the profession, it ignores it. When it took nearly two years from the time a formal complaint was filed until a trial panel hearing was held in *State ex rel. Oklahoma Bar Ass'n v. Benefield,* 2005 OK 75, 125 P.3d 1191, the Court could not have realized that this was a common practice. It must stop. In *Benefield,* there was nothing in the record to explain the excessive delay. Here, in an apparent attempt to appease the Court, General Counsel and respondent's lawyer offered an Alphonse–Gaston explanation of culpability for the delay: ... (citations omitted.)

¶ 4 In *Fraley,* supra, the procedures for resignation were again circumvented. The lawyer misappropriated funds belonging to the firm for which he worked and from its clients. An agreement was made between the founder of Fraley's firm, his lawyer, and Fraley, and implicitly with the knowledge of the OBA, that he would resign from the OBA and he would be employed by the firm as a law clerk to earn money to pay back his thefts. The firm had reimbursed the client funds. The OBA allegedly learned of his misconduct after his resignation and did not pursue a disciplinary action against him because there was no loss to the client security fund. We strongly disapproved of the informal resignation.

¶ 5 *Fraley,* supra, teaches that the OBA lacks the authority to decide if an attorney should or should not be permitted to resign without formal approval of this Court. The

---

The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents may also be furnished to the Chief Justice by the General Counsel. Such documents, whether from this jurisdiction or any other jurisdiction, shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

2. Title 5 O.S.2011, Ch. 1 App. 1–A, Rule 7.3, Rules Governing Disciplinary Proceedings provides:

Upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court shall by order immediately suspend the lawyer from the practice of law until further order of the Court. In its order of suspension the Court shall direct the lawyer to appear at a time certain, to show cause, if any he has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession

duties of enforcement and prosecution are placed with the OBA for constitutional reasons. However, the OBA must follow the rules, otherwise it cannot fulfill its duties. This Court stated, in *State ex rel. Oklahoma Bar Association v. Albert*, 2007 OK 31, ¶ 11, 163 P.3d 527:

> The responsibility of this Court in disciplinary proceedings is not to punish but rather to inquire into and to gauge a lawyer's continued fitness to practice law, with a purpose of safeguarding the interest of the public, of the courts, and of the legal profession. . . .

¶ 6 The initial complaint against the respondent, Casey, was filed on October 24, 2002, alleging misconduct that began as early as 1996, and continued through 2000. A trial panel was assigned and the initial hearing was set for December 23, 2002. On December 10, 2002, the Bar Association requested a continuance, offering no reason, other than the parties needed more time. A continuance was granted. For unknown reasons, the matter lingered until November of 2007, when the parties jointly requested that the matter be held in abeyance. This motion was granted on December 5, 2007. By December of 2010, the Chief Justice's office asked for an explanation as to why the matter had not proceeded. The response was that the parties were attempting to preserve judicial economy!

¶ 7 Even after the matter was finally set for hearing on March 28, 2011, it was reset six times on the request of the respondent. The trial panel members changed twice throughout this portion of the delay. Apparently, through the efforts of the respondent, with the help of the Bar Association, the matter was continued by the trial panel and the lawyer was allowed to practice for ten years. In *State of Oklahoma ex rel. Oklahoma Bar Ass'n v. Benefield*, 2005 OK 75, 125 P.3d 1191 the cause took nearly two years from the time a formal complaint was filed until the trial panel held a hearing and issued its report. Rule 6.6, of the Rules Governing Disciplinary Proceedings, 5 O.S. 2011 Ch. 1, App. 1–A requires the selection of a trial panel within ten days after receiving notice of the complaint.[3] Rule 6.7 of the Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A requires that a hearing **shall not be less than thirty to sixty days** from the date of the appointment of the trial panel, unless good cause is shown.[4]

¶ 8 There was nothing before the Court which explained the excessive delay in holding the hearing. It is unseemly to charge a lawyer with lack of reasonable diligence and conduct prejudicial to the administration of justice when it appeared that the Bar Association engaged in the same conduct. I recommended issuing a show cause order to the Bar Association asking for an explanation for its unreasonable delay and an explanation of how the misconduct charges of lack of diligence[5] and conduct prejudicial to the administration of justice[6] comport with fairness and due process.[7] There is a reason that the

---

**3.** Rule 6.6 of the Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A provides in pertinent part:

"Within ten (10) days after receiving notice of the filing of a complaint, the Chief Master (or Vice–Chief Master if the Chief Master is absent or otherwise fails to act within such period) of the Professional Responsibility Tribunal shall select three members thereof to serve as a trial panel of Masters . . ."

**4.** Rule 6.7 of the Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A provides:

"The Chief Master or Vice–Chief Master of the Professional Responsibility Tribunal shall notify the respondent and the General Counsel of the appointment and membership of the Trial Panel and of the time and place for hearing, which shall not be less than thirty (30) days

nor more than sixty (60) days from the date of appointment of the Trial Panel. Extensions of this period may be granted by the Chief Master (Or the Vice–Chief Master, in case of the unavailability of the Chief Master) for good cause shown."

**5.** Rule 1.3, Oklahoma Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, see note 2, supra.

**6.** Rule 8.4(d), Oklahoma Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, see note 1, supra.

**7.** Fundamentals of due process are applicable to lawyer disciplinary proceedings. *State ex rel. Oklahoma Bar Ass'n v. Wolfe*, 1997 OK 47, ¶ 20, n. 25, 937 P.2d 988; *State ex rel. Oklahoma Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 15, 914 P.2d 644.

law provides for laches, estoppel and dismissal for failure to prosecute.

¶ 9 In disciplinary matters, the Bar Association exercises a prosecutorial power [8] subject to this Court's de novo review.[9] The responsibility of this Court in disciplinary proceedings is not to punish, but rather to inquire into and to gauge a lawyer's continued fitness to practice law, with a purpose of safeguarding the interest of the public, of the courts, and of the legal profession.[10] The nondelegable, constitutional responsibility to regulate the practice and the ethics, licensure, and discipline of legal practitioners is solely vested in this Court.[11] What protection or interest of the public has been guarded in that time? None. What protection or interest of the public will be secured sixteen years after the initial violation? Probably none.

---

8. *State ex rel. Oklahoma Bar Ass'n v. Caldwell,* 1994 OK 57, ¶ 4, 880 P.2d 349; *Tweedy v. Oklahoma Bar Ass'n,* 1981 OK 12, ¶ 10, 624 P.2d 1049.

9. *State ex rel. Oklahoma Bar Ass'n v. Mayes,* 2003 OK 23, ¶ 17, 66 P.3d 398; *State ex rel. Oklahoma Bar Ass'n v. Israel,* 2001 OK 42, ¶ 13, 25 P.3d 909; *State ex rel. Bar Ass'n v. Bolusky,* 2001 OK 26, ¶ 14, 23 P.3d 268.

10. *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1995 OK 98, ¶ 15, 904 P.2d 597; *State ex rel. Oklahoma Bar Ass'n v. Donnelly,* 1992 OK 164, ¶ 14, 848 P.2d 543; *State ex rel. Oklahoma Bar Ass'n v. Colston,* 1989 OK 74, ¶ 20, 777 P.2d 920; *State ex rel. Oklahoma Bar Ass'n v. Moss,* 1983 OK 104, ¶ 12, 682 P.2d 205.

11. *State ex rel. Oklahoma Bar Ass'n v. Holden,* 1995 OK 25, ¶ 1, 895 P.2d 707; *State ex rel. Oklahoma Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 8, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n,* see note 8, supra at ¶ 4.