OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS
2015 OK 50
Case Number: SCBD-6223
Decided: 06/30/2015
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2015 OK 50, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JAMES M. DEMOPOLOS, Respondent.

PROFESSIONAL DISCIPLINARY PROCEEDING

¶0 Respondent, a lawyer, pled guilty in the District Court of Oklahoma County to the crimes of obstructing a public officer, threatening to perform an act of violence involving or intended to involve serious bodily harm or death, and domestic abuse assault and battery. The Oklahoma Bar Association sought a post-conviction immediate suspension of Respondent's license to practice law and this Court issued an order of immediate suspension. Respondent sought and was provided a mitigation hearing held before a trial panel of the Professional Responsibility Tribunal. The panel recommended a six-month suspension with a deferred suspension of two years and one day while the Bar sought a suspension for two years. We hold that the appropriate discipline is a one-year suspension and an additional deferred suspension of one year with conditions upon Respondent's conduct and rehabilitation.

INTERIM SUSPENSION PREVIOUSLY ORDERED:
RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR ONE YEAR
COMMENCING ON FEBRUARY 2, 2015, WITH AN ADDITIONAL ONE-YEAR
SUSPENSION UNTIL FEBRUARY 3, 2017, THAT IS DEFERRED UPON
RESPONDENT'S COMPLIANCE WITH CONDITIONS;
RESPONDENT SHALL PAY COSTS WITHIN NINETY DAYS 

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
John W. Coyle, III, Coyle Law Firm, Oklahoma City, Oklahoma, for Respondent.

EDMONDSON, J.

¶1 The Respondent, a lawyer licenced to practice law in Oklahoma, pled guilty to three misdemeanors and the Bar Association sought to have his Bar license immediately suspended with a two-year suspension by commencing a proceeding authorized by Rule 7 of the Rules Governing Disciplinary Proceedings. We previously entered an order of interim suspension. After review of the record made before the trial panel of the Professional Responsibility Tribunal, we conclude that the appropriate discipline is a suspension of one year with an additional deferred professional suspension for one year conditioned upon Respondent's compliance with conditions relating to his conduct and rehabilitation.

¶2 A criminal Information was filed against the Respondent, James M. Demopolos, in the District Court for Oklahoma County.[1] One count was dismissed[2] and he pled guilty to violating: (1) 21 O.S. § 540, obstructing a public officer;[3] (2) 21 O.S. § 1378(B), threatening to perform an act of violence involving or intended to involve serious bodily harm or death;[4] and (3) 21 O.S. § 644(C), domestic abuse assault and battery.[5] Upon Respondent's guilty plea, the District Court deferred its two-year sentence until its review on January 6, 2017, and ordered Respondent to pay specific fines and costs. The court ordered he be placed under the supervision of the Oklahoma Department of Corrections and successfully complete a 52-week Batterers Intervention Program[6] with substance abuse testing.

¶3 A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement is subject to professional discipline when the crime demonstrates such lawyer's unfitness to practice law.[7] The clerk of any court in this State in which a lawyer is convicted or as to whom proceedings are deferred is required to "transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within (5) days after said conviction."[8] The transmitted copies received by the Bar Association are filed in this Court by the Bar Association.[9] The Bar Association filed in this Court copies of the Information and Guilty Plea from Respondent's criminal case.

¶4 Upon receipt of the specified documents from a lawyer's criminal case, this Court enters an interim order of suspension that immediately suspends the lawyer from practicing law, and the lawyer is provided with an opportunity to show cause why the order of suspension should be set aside.[10] This Court entered an interim suspension order on February 2, 2015, and provided Respondent with an opportunity to object to the interim suspension and request a mitigation hearing before a trial panel of the Professional Responsibility Tribunal (PRT).[11] Respondent filed a waiver of his opportunity to object to the interim suspension, and he requested a mitigation hearing. A trial panel of the PRT held a mitigation hearing with Respondent being represented by counsel. After that hearing, both the Bar and Respondent filed their briefs in this Court addressing evidence at the hearing and legal argument concerning the appropriate professional discipline.

I. The Court's Rule 7 Review of Respondent's Conduct

¶5 This Court has exclusive original jurisdiction over Bar disciplinary matters.[12] Protecting the public and purification of the Bar are the primary purpose of disciplinary proceedings rather than punishment of the offending attorney.[13] In Bar disciplinary proceedings, this Court will conduct a de novo review of the record to determine if misconduct has occurred and what discipline is appropriate.[14] Pursuant to Rule 7.2 of the Rules Governing Disciplinary Proceedings (RGDP), Respondent's Guilty Plea constitutes conclusive evidence of the commission of the crimes that serve as the basis for professional discipline, and with the additional documents filed in this Court there is a sufficient record for our review of Respondent's Bar proceeding.[15]

¶6 The evidence before the trial panel was that one Saturday evening in May of 2014, Respondent was verbally abusive and consuming alcohol. His condition caused his wife to leave their residence and spend the night with a relative. Upon her return the next morning she made a 911 telephone call seeking help because Respondent was drunk, verbally abusive, and physically abusive having hit her in her arm and head with his closed hand.

¶7 The police arrived and observed his intoxicated state. He made threats of physical violence against his wife in the presence of the police, including statements describing what he would do to her when he was no longer in custody. They noticed a bruise on his wife consistent with her complaint. The police sought identifying information from him and he responded with a contemptuous epithet. He admitted to the police that he had hit his wife. These facts served as a basis for three counts in the Information filed against him and his subsequent guilty pleas.

¶8 Although this Court's previous order of interim suspension is a determination that Respondent's admitted criminal conduct facially demonstrates his unfitness to practice law, we also examine all of his conduct in light the evidence submitted at the post-mitigation hearing for our determination of the proper professional discipline for Respondent.[16] There are two basic issues in this summary disciplinary proceeding: does the conviction demonstrate the lawyer's unfitness to practice law, and if so, what is the proper professional discipline.[17] We do not adjudicate the existence of facts which gave rise to the criminal charges.[18]

¶9 In Givens we explained that "Violent acts in the form of domestic abuse demonstrate a lawyer's unfitness to practice law. We most recently found, '[a]s incidents of domestic ... abuse rise and become the focus of ... public attention, it becomes more incumbent on this Court to protect the public by sending a message to other lawyers that this misconduct is considered a serious breach of a lawyer's ethical duty and will not be tolerated.'"[19] Twenty-five years ago this Court discussed criminal convictions that demonstrate unfitness to practice law; and we noted language appearing in a Comment to one of our Rules of Professional Conduct that was also cited recently in Givens: ". . . Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty or breach of trust, or serious interference with the administration of justice are in that category."[20]

¶10 A lawyer's guilty plea or criminal conviction for a violent act of domestic abuse is a violation of the Oklahoma Rules of Professional Conduct, 5 O.S. Ch. 1, App. 3-A, Rule 8.4(b).[21] Respondent's guilty plea for a violent act of domestic abuse merits professional discipline imposed by this Court.

II. The Court's Rule 7 Review of Respondent's Conduct and
Mitigation of Professional Discipline

¶11 The evidence at the mitigation hearing was that Respondent had practiced law since 1978 and had no previous complaints for professional discipline. Respondent had previously worked as an oil and gas title lawyer, and no allegations have been made that his conduct has injuriously affected a client. Respondent is currently employed as a landman, and he works on title examinations authored by his employer who is a lawyer. An affidavit was submitted to show that Respondent has been compliant with the Lawyers Helping Lawyers program. A lawyer testified concerning Lawyers Helping Lawyers and Respondent's participation in the program.

¶12 A lawyer testified that he became Respondent's sponsor in Alcoholics Anonymous (AA). He explained that Respondent had made progress in that program. The evidence shows that Respondent's continuous participation in AA had been for less than a year at the time the mitigation hearing occurred. Another lawyer testified that he had shared an office with, and rented an office to, Respondent for several years. He stated that he had never seen him consume alcohol while working, or show any indication that alcohol had affected his practice of law.

¶13 The evidence at the mitigation hearing also included Respondent's previous chronic use of marijuana as well as his use of sedatives. Respondent successfully completed a thirty-day in-patient treatment program for substance abuse after his arrest. However, he had two relapses of consuming alcohol shortly after returning home after treatment, and these two events occurred approximately five months prior to the mitigation hearing. The evidence showed that immediately after the relapses he continued with attending his AA meetings and informed his AA sponsor of the events. The record shows that Respondent has not failed any of his post-conviction drug tests, and testimony shows that he has not used marijuana or sedatives after his in-patient treatment.

¶14 Testimony at the hearing included an incident that occurred eleven years earlier when Respondent had been drinking alcohol and was arrested after having a physical altercation with a male relative. No criminal charges were filed relating to this arrest.

¶15 Testimony at the hearing from both Respondent and his wife showed that Respondent had previously pushed, shoved, and slapped his wife when he was drinking alcohol. His wife's testimony shows that she is supportive of her husband, does not want him to lose his Bar license, and that she felt compelled to call the police because she needed help from someone to control Respondent or defuse the situation. She expressed her hope that the two of them could live in an alcohol-free environment. She testified that without alcohol consumption in the home they are kind to each other, there is no verbal or physical abuse present, and that they have been together for twenty-four years.

¶16 She stated that their future life as a married couple had to be based upon the absence of alcohol consumption in the home. She testified that she participated in Respondent's in-patient counseling sessions, attended AA meetings, and that she and Respondent were working on the issues as both a couple and as individuals. She testified that Respondent's mother, sister, two aunts, and an uncle had died during the previous five years and she thought that his increased alcohol consumption during this period was tied to what she perceived to be his depression concerning these events. She testified that during the last two years Respondent became angry when he was intoxicated. She testified that Respondent's consumption of alcohol occurred only at home.

¶17 In Zannotti, the lawyer pled nolo contendere to the misdemeanor crimes of domestic assault and battery and malicious injury to property. He received a two year deferred sentence by the District Court, and this Court imposed a two-year suspension from the practice of law. When determining discipline, this Court took into consideration the fact the trial court thought it was necessary to keep Zannotti in the criminal justice system for a full two years for the safety of the public.[22] In the present case, the District Court has Respondent being supervised by the criminal justice system for two years.

¶18 In Soderstrom, after a lawyer's plea of guilty for unlawful possession of a controlled substance, we suspended the lawyer for two years and a day.[23] We determined that his continued relapses with substance abuse adversely impacted his fitness to practice law, and a substantial period of sobriety was necessary before any request for reinstatement.[24] We do consider for the purpose of mitigation whether a lawyer's conduct has changed following medical and psychological treatment.[25] But we are concerned in the present case that Respondent's period of sobriety is less than a year after a pattern of alcohol and drug abuse that lasted for several years and that it became a factor in the domestic abuse.

¶19 In Ijams, the lawyer was sentenced on four misdemeanor counts, eluding a police officer, DUI-alcohol, operating a vehicle with defective equipment and obstructing a police officer.[26] In addition to his interim suspension, his license to practice law was suspended until the date of his completion of his deferred sentences, approximately one year after our pronouncement. We again considered the length of a lawyer's criminal sentence as one factor in arriving at the appropriate period of professional suspension to be imposed.[27]

¶20 Respondent's testimony included a statement of contrition and his humiliation and embarrassment that has arisen from his conduct. For the purpose of mitigating discipline we also determine whether a lawyer recognizes the adverse effect of his or her substance abuse and cooperates in the treatment for remedying the abuse.[28]

¶21 Respondent has shown his willingness to cooperate with treatment by his continued participation in Lawyers Helping Lawyers, AA, and the Batterers Intervention Program, as well as his completed in-patient treatment program. Respondent's brief expresses a willingness to have random drug testing and if he fails any test to be immediately suspended, including the panel-recommended two-years-and-a-day suspension upon a failed test, which would then require any effort for professional reinstatement to comply with the requirements for a lawyer who has been disbarred.[29]

¶22 We note Respondent's emphasis in the record on his attendance at a Batterers Intervention Program, and the fact that he started the program before the trial court made it a condition of his deferred criminal sentence. We encourage his efforts in obtaining treatment. But while we have considered compliance with court-ordered conditions for the purpose of mitigating professional discipline, this Court expects a lawyer's compliance with a court order as a professional attribute and such compliance is not a quid pro quo for mitigation. A respondent's compliance with court orders, such as attendance and voluntary commencement in a treatment program, is merely one factor when we examine the record for evidence of an actual change in attitude and conduct that the lawyer's treatment is designed to foster.[30]

¶23 We note and appreciate the testimony of Respondent's wife and her candid assessments of their marital relationship and the current conduct of Respondent. We also note the testimony of Respondent's AA sponsor and his positive view of Respondent's progress in AA. While we note that the evidence shows a link between Respondent's use of alcohol and his improper behavior, because of the recentness of his sobriety we are concerned with Respondent's resolve to permanently change his conduct. We have considered Respondent's absence of prior professional discipline.[31] We have also considered the District Court's two-year period of supervision by the Department of Corrections, although this factor is not controlling on the time a lawyer's professional license should be suspended.[32]

¶24 The Bar Association requests that the Court suspend Respondent from the practice of law for two years commencing on the date of his interim suspension. At the mitigation hearing, Respondent argued that no final suspension be imposed and that the order of interim suspension be lifted. Respondent's post-hearing brief argues that the trial panel's recommendation be approved.

¶25 Respondent's trial panel recommended that he receive a six-month suspension from the practice of law, combined with a deferred suspension of two years and one day, subject to his compliance with seven terms of probation. Six of the terms are:

(1) Respondent shall comply with all conditions of his court-imposed deferred sentence, including Department of Corrections probation supervision until released from his deferred sentence;

(2) Respondent shall refrain from any and all use of alcohol, mind-altering substances or illegal drugs;

(3) Respondent shall sign and maintain a contact with Lawyers Helping Lawyers, and have weekly contact with his mentor;

(4) Respondent shall waive all questions of confidentiality and permit his sponsor at Lawyers Helping Lawyers to notify the General Counsel of the Oklahoma Bar Association in the event of any default by Respondent in the terms of the probation or deferred suspension;

(5) Respondent shall attend no less than three (3) AA sessions per week; and

(6) Respondent shall abide by the Rules of Professional Conduct.

The seventh condition is that Respondent shall be subject to random drug testing through an entity specified by the trial panel's recommendation, or by a similar service as directed by Lawyers Helping Lawyers, and the testing shall be at Respondent's expense, or through application for expense assistance through the Lawyers Helping Lawyers Foundation.

¶26 Recommendations of a PRT trial panel are advisory and not binding on this Court.[33] This Court adjudicates all issues of fact and law in a lawyer disciplinary proceeding.[34] However, our review of the record should not be considered as diminishing the importance of the PRT trial panel and its recommendations. A trial panel functions as this Court's hearing examiner and provides a procedural conduit for the record and legal arguments by making the matter ready for this Court's original de novo review of the case.[35] The lawyers and non-lawyers who serve on trial panels of the PRT[36] receive no compensation for their services,[37] and they provide an important public service to the Bar, this Court, and the People of the State of Oklahoma. We agree with the trial panel that Respondent should have both a suspension and a deferred suspension, but we disagree with the trial panel's recommended time for suspension.

¶27 In Zannotti, the respondent physically attacked a person with whom he had a previous dating relationship when the two of them met because respondent was "wanting to get back together."[38] His victim was traumatized and needed counseling and medication as a result of the assault.[39] She obtained a protective order against the respondent. When discussing discipline we noted that the respondent tried to shift responsibility for his conduct to his victim.[40] We imposed a two-year suspension of respondent's license to practice law.

¶28 In Givens, the intoxicated respondent physically attacked his fourteen-year-old son, and two years later struck him again after he had received a deferred criminal sentence of eighteen months and court-ordered participation in a Batterers Intervention Program.[41] We noted the respondent's pattern of abuse, that he continued this pattern while on probation of his criminal sentence, and his continued substance abuse relapses while in a substance abuse program. We imposed a suspension of respondent's license for two years and one day.

¶29 In the present case, Respondent and his adult victim, his wife, have reconciled. They live together and she is helping him with his efforts to maintain sobriety. She attends meetings on alcoholism and wants their home to be without alcohol consumption. She did not seek or request a protective order and does not feel threatened by Respondent when he is sober. She testified that she loves her husband and that he is a loving husband when he is sober. She testified that no physical abuse has occurred since the events on the Sunday morning in May 2014. Respondent has not tried to shift to his wife any blame or responsibility for his physical abuse of her. Respondent has not violated a condition of his deferred criminal sentence. His drug tests have not shown any substance abuse. In a lawyer disciplinary proceeding, it is the duty of this Court to determine the appropriate level of discipline to be imposed, based on the facts and circumstances of the case.[42] We agree with the trial panel that these circumstances are different from those in both Zannotti and Givens.

¶30 However, Respondent did not limit his lack of self-control to his relationship with his wife. When the police asked him for identifying information he declined to provide the information and responded with cursing and a derogatory epithet. His intoxicated tirade to the police included specific threats of harm against his wife. His opprobrious conduct reflects on him and the Bar. We conclude that Respondent should be immediately suspended from the practice of law for one year and that he should have an additional one-year deferred suspension with the seven conditions recommended by the trial panel and as specified herein.

¶31 This Court has imposed a final suspension of a lawyer's license with that suspension commencing from the date of a previous interim suspension of that lawyer.[43] Respondent's immediate one-year suspension commences on the date this Court issued an interim suspension of Respondent's Bar license, February 2, 2015. In addition to this one-year suspension until February 3, 2016, we conclude that Respondent should continue to be professionally monitored both during and after this one-year suspension with an additional one-year deferred professional suspension of his Bar license until February 3, 2017.

¶32 We treat the immediate one-year suspension of Respondent's Bar license as providing him the rule-specified opportunity to seek professional reinstatement on or after February 3, 2016.[44] The additional one-year deferred suspension is conditioned upon Respondent's continued compliance with the seven conditions of the trial panel specified herein and the one-year deferred suspension shall cease on February 3, 2017, provided that Respondent does not violate any condition of his deferred suspension.

III. Procedure for Implementing Respondent's Deferred Professional Suspension

¶33 A lawyer's criminal conviction furnishes clear and convincing evidence that the lawyer committed the criminal acts that are subsequently used to warrant professional discipline in the form of a suspension or deferred suspension of a Bar license.[45] However, in the context of imposing a deferred professional suspension of a license to practice law with conditions for the lawyer's future conduct, we are not concerned with facts used as evidence for the court's deferral of the suspension, but facts showing a violation of the conditions of the lawyer's deferred suspension. A similar circumstance occurs with revocation of a probation in a criminal case.[46] Revocation of a constitutionally protected liberty interest in a criminal probation case typically involves the factual question whether the probationer has violated a condition of probation,[47] and in the acceleration of a deferred sentence at an acceleration hearing "the court only makes a factual determination involving the existence of a violation of the terms of the deferred sentence."[48] The probationer whose probation is revoked by a judicial proceeding is entitled to notice of his or her alleged violations of probation.[49]

¶34 A lawyer accused of professional misconduct must also be afforded due process of law prior to suspension or revocation of the lawyer's licence to practice law.[50] A lawyer receives notice of any adverse claim that may be used to impose professional discipline.[51] General Counsel for the Bar must give notice to a lawyer that the Bar has filed a request with this Court for implementing a deferred suspension.[52]

¶35 We have previously required that the General Counsel of the Bar Association notify this Court when a lawyer's professional license probation has been violated, and this Court then implements the deferred suspension.[53] That practice shall continue with General Counsel's notification filed in this Court showing (1) the Respondent has violated his probation, (2) a request that the Court immediately implement a deferred suspension, and (3) the General Counsel has provided notice to Respondent of the Bar's filing.

¶36 We have previously stated that a deferred suspension would commence on the date the conditions of deferral or probation were violated by the lawyer.[54] Making the effective date of the suspension the same date of the lawyer's violation requires the lawyer to engage in professional self-policing. A lawyer has a duty to protect the interests of his or her clients from adverse circumstances arising from a professional suspension, including the Court implementing a deferred suspension.[55] This self-policing concept is also found in the procedure for a resignation pending professional discipline where we make a proper resignation effective on the date it was submitted to the Oklahoma Bar Association.[56] The previous practice will continue that a deferred suspension will commence upon a respondent's violation of a condition of that suspension; however, the Respondent will be provided an opportunity to object to the General Counsel's request for implementing the deferred sentence.

¶37 A lawyer must be given an opportunity to object to implementation of a deferred professional suspension. A State may impose an interim suspension pending an opportunity for a prompt hearing that would definitely determine a fact that is used for deprivation of a state-created property right such as a professional bar licences where, for example, a State has an important interest in insuring the integrity of the practice of law carried on pursuant to that professional license.[57] An order of this Court implementing a deferred suspension of a lawyer's license to practice law because of a violation of the associated deferred-suspension conditions must be based upon facts before this Court showing that the lawyer has actually violated the probation.[58] This Court has a non-delegable role as a finder of facts that a respondent's conduct warrants the immediate implementation of a deferred suspension, i.e., a violation has actually occurred and the suspension should thus be implemented.[59]

¶38 Upon General Counsel filing a notification seeking to implement Respondent's deferred suspension, this Court will issue an interim order immediately implementing the deferred suspension effective the date of the alleged violation stated in General Counsel's notification, and providing Respondent an opportunity to show cause why the Court should not make the deferred suspension final.[60] Upon Respondent's filed waiver of his opportunity to respond or his failure to timely respond to the Court's order, a final order shall be entered implementing the deferred suspension. Upon Respondent's timely filed objection to the Bar's request, the Court will determine if the record is adequate for implementing the deferred suspension, whether the interim order implementing the suspension should be set aside, and take any other action that the Court deems appropriate.

¶39 Respondent is cautioned that should the General Counsel properly notify this Court of Respondent's failure to comply with one or more of the deferred-suspension conditions at any time prior to February 3, 2017, he is subject to this Court entering an interim order immediately imposing the one-year suspension. Respondent is cautioned that any future unprofessional conduct by him during his period of suspension and deferred suspension is subject to this Court imposing additional professional discipline when notice of his conduct is properly brought to our attention by the OBA.[61] If upon a violation of Respondent's deferred suspension, the Bar seeks to impose professional discipline in addition to application of the one-year deferred suspension, then the Bar should: (1) in the present Bar proceeding notify this Court of Respondent's violation for immediate implementation of the deferred suspension in this proceeding, and (2) utilize the proper disciplinary procedure for the particular misconduct alleged against the Respondent, e.g., the procedures specified in Rules 6, 7, or 10.[62]

IV. COSTS

¶40 In a proceeding pursuant to Rule 7 RGDP, we have imposed the costs of the proceeding on the lawyer receiving professional discipline.[63] In the context of a Rule 7 proceeding, we have noted that Rule 6.16 RGDP provides the costs of the investigation, record and disciplinary proceedings shall be surcharged against the disciplined lawyer, unless remitted for good cause by this Court.[64] Rule 6.16 requires the costs to be paid within ninety (90) days.

¶41 Respondent had notice that the costs of a Rule 7 proceeding could be imposed against him. No good cause for remission has been shown. The application of the Bar Association for assessing costs against the respondent in the amount of One-Thousand Two-Hundred and Fifty-One dollars and Eighty cents ($1,251.80) is granted. The costs shall be paid by Respondent within ninety (90) of the date this opinion becomes final.

V. Conclusion

¶42 Respondent is suspended from the practice of law for one year commencing on February 2, 2105, with an additional one-year suspension that is deferred upon Respondent's compliance with the conditions of the deferral until February 3, 2017.

¶43 In the event that Respondent violates a condition of his deferred suspension, the General Counsel of the Bar Association shall notify this Court and request an immediate implementation of a one-year professional suspension against Respondent. In the event Respondent violates a condition of his deferred suspension, the effective date and commencement of the previously deferred one-year suspension shall be the date Respondent violated a condition of his deferred sentence.

¶44 Respondent is ordered to pays the costs of this proceeding in the amount of $1,251.80 within ninety days from the date this opinion is final.

¶45 REIF, C. J., KAUGER, WATT, WINCHESTER, EDMONDSON, COLBERT, GURICH, JJ., concur.

¶46 COMBS, V. C. J., TAYLOR, J., dissent.

¶47 TAYLOR, J.,

dissenting. I would suspend the Respondent for two years. He should not be allowed to practice law while on criminal probation.

FOOTNOTES

[1] State of Oklahoma v. James M. Demopolos, CF-2014-3767, District Court of Oklahoma County.

[2] The first count of the Information alleged that Respondent had offered a bribe to the police officers in the form of money to release him from custody in violation of 21 O.S. § 381. The State moved to dismiss this Count and this Count was noted as dismissed in the Plea of Guilty.

[3] 21 O.S. § 540: "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor."

[4] 21 O.S. § 1378(B): "Any person who shall threaten to perform an act of violence involving or intended to involve serious bodily harm or death of another person shall be guilty of a misdemeanor, punishable upon conviction thereof by imprisonment in the county jail for a period of not more than six (6) months."

[5] 21 O.S. § 644(C): "Any person who commits any assault and battery against a current or former spouse, a present spouse of a former spouse, a former spouse of a present spouse, parents, a foster parent, a child, a person otherwise related by blood or marriage, a person with whom the defendant is or was in a dating relationship as defined by Section 60.1 of Title 22 of the Oklahoma Statutes, an individual with whom the defendant has had a child, a person who formerly lived in the same household as the defendant, or a person living in the same household as the defendant shall be guilty of domestic abuse. Upon conviction, the defendant shall be punished by imprisonment in the county jail for not more than one (1) year, or by a fine not exceeding Five Thousand Dollars ($5,000.00), or by both such fine and imprisonment. Upon conviction for a second or subsequent offense, the person shall be punished by imprisonment in the custody of the Department of Corrections for not more than four (4) years, or by a fine not exceeding Five Thousand Dollars ($5,000.00), or by both such fine and imprisonment. The provisions of Section 51.1 of this title shall apply to any second or subsequent offense."

21 O.S. 2011 § 644 was amended by Laws 2014, c. 71 § 1, eff. Nov. 1, 2014, and the language of paragraph (C) does not appear to have been altered by the amendment. 2014 Okla. Sess. Laws, c. 71, § 1, pg. 233.

[6] The Victim Services Unit of the Office of the Oklahoma Attorney General provides services for persons who require domestic violence or sexual assault services through a domestic violence or sexual assault program; and for the purpose of providing this service a "'batterers intervention program' or 'batterers treatment program' means an agency, organization, facility or person who offers, provides or engages in the offering of counseling or intervention services to persons who commit domestic abuse." 74 O.S.2011 § 18p-1(D).

[7] 5 O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.1: "A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal."

[8] 5 O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.2: "The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents shall also be furnished to the Chief Justice by the General Counsel within five (5) days of receiving such documents. Such documents, whether from this jurisdiction or any other jurisdiction shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules."

[9] State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 22, 330 P.3d 11, 16.

[10] 5 O.S.2011 Ch. 1, App. 1-A, Rules Governing Disciplinary Proceedings, Rule 7.3: "Upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court shall by order immediately suspend the lawyer from the practice of law until further order of the Court. In its order of suspension the Court shall direct the lawyer to appear at a time certain, to show cause, if any he has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession."

[11] State ex rel. Oklahoma Bar Ass'n v. James M. Demopolos, 2015 OK 5, S.C.B.D. No. 6223 (Feb. 2, 2015, Published in O.B.J. Only).

[12] State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 8, 343 P.3d 214, 216-217, State ex rel. Oklahoma Bar Ass'n v. Funk, 2005 OK 26, ¶ 3, 114 P.3d 427, 430.

[13] State ex rel. Oklahoma Bar Ass'n v. Chappell, 2004 OK 41, ¶ 23, 93 P.3d 25, 31.

[14] Givens, 2014 OK 103, at ¶ 9, 343 P.3d at 217, citing State ex rel. Oklahoma Bar Ass'n v. Soderstrom, 2013 OK 101, ¶¶ 9-10, 321 P.3d 159, 160.

[15] See Rule 7.2 at note 8 supra; Givens, 2014 OK 103, at ¶ 9, 343 P.3d at 217; State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, n. 1, 60 P.3d 1024, 1026 (although a lawyer may in the interest of explaining his or her conduct or by way of mitigating the discipline to be imposed submit evidence tending to mitigate the severity of discipline, a post-conviction disciplinary hearing will not relitigate the facts which gave rise to the criminal charges).

[16] State ex rel. Oklahoma Bar Ass'n v. Wilcox, 2014 OK 1, ¶ 45, 318 P.2d 1114, 1127.

[17] State ex rel. Oklahoma Bar Ass'n v. Hart, 2014 OK 96, ¶ 8, 339 P.3d 895, 898; State ex rel. Oklahoma Bar Ass'n v. Wilcox, 2014 OK 1, ¶ 45, 318 P.2d 1114, 1127, citing State ex rel. Oklahoma Bar Ass'n v. Cooley, 2013 OK 42, ¶ 11, 304 P.3d 453, 455.

[18] See note 15 supra, and citation to Shofner.

[19] State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217 quoting State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 24, 330 P.3d 11, 17.

[20] State rel. Oklahoma Bar Ass'n v. Armstrong, 1990 OK 9, 791 P.2d 815, 818 quoting Comment, 5 O. S. Supp.1988, Ch. 1, App. 3-A, Rule 8.4 (emphasis added). See note 21, infra, citing Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217, and its reliance on Rule 8.4 and similar language found in current Rule 8.4, Comment 2.

[21] State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 11, 343 P.3d at 217, quoting O. R. P. C. Rule 8.4(b) and Comments 2 to Rule 8.4.

Rule 8.4, O. R. P. C. provides in part: "It is professional misconduct for a lawyer to: . . . (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; . . . ."

Comment 2 to Rule 8.4 provides in part: "Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation."

[22] See the explanation of Zannotti in State ex rel. Bar Ass'n v. Givens, 2014 OK 103, ¶ 19, 343 P.3d at 218, citing Zannotti, 2014 OK 25 at ¶ 24, 330 P.3d 11.

[23] State ex rel. Oklahoma Bar Ass'n v. Soderstrom, 2013 OK 101, ¶ 13, 321 P.3d 159, 161,

[24] See the explanation of Soderstrom in State ex rel. Bar Ass'n v. Givens, 2014 OK 103, ¶ 20, 343 P.3d at 218-219, citing Soderstrom, 2013 OK 101 at ¶ 12, 321 P.3d 159.

[25] See, e.g., State ex rel. Oklahoma Bar Ass'n v. Busch, 1998 OK 103, ¶ 50, 976 P.2d 38, 56 (we noted that the lawyer's conduct had not changed following his treatment when we concluded that his mitigation plea was unpersuasive).

[26] State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, 338 P.3d 639,

[27] Ijams, 2014 OK 93, at ¶ 8, 338 P.3d at 642.

[28] Ijams, 2014 OK 93, at ¶ 8, 338 P.3d at 642.

[29] State rel. Oklahoma Bar Ass'n v. Giger, 2003 OK 61, n. 34, 72 P.3d 27, 40; State ex rel. Oklahoma Bar Ass'n v. Wolfe, 919 P.2d 427, 433 (Kauger, V.C.J., concurring, and joined by Watt, J.) ("A suspension from the practice of law for a period of two years and one day is tantamount to disbarment in that the suspended attorney must follow the same procedures for readmittance as would a disbarred counterpart.").

[30] See the explanation of Soderstrom in Givens, ¶ 20, that is cited in note 24 supra, and the reference to Busch, ¶ 50, that is cited in note 25 supra.

[31] State ex rel. Oklahoma Bar Ass'n v. Dobbs, 2004 OK 46, ¶ 106, 94 P.3d 31, 70 (absence of prior discipline may be considered for mitigation of professional discipline).

[32] This Court has an exclusive and nondelegable power in regulating the practice of law and determining professional discipline for a lawyer. State ex rel. Oklahoma Bar Ass'n v. Casey, 2012 OK 93, ¶2, 295 P.3d 1096, 1098; In re Spilman, 2010 OK 70, ¶ 10, 240 P.3d 702, 709. A criminal sentence imposed by a District Court may not be used to control this Court's determination of an appropriate professional discipline for a lawyer.

[33] State ex rel. Oklahoma Bar Ass'n v. Bradley, 2014 OK 78, ¶ 23, 338 P.3d 629, 637; State ex rel. Oklahoma Bar Ass'n v. Aston, 2003 OK 101, ¶ 10, 81 P.3d 676, 678.

[34] State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 48, n. 50, 264 P.3d 1197, 1215. See also State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 4, 330 P.3d 11, 12 (stipulations inconsistent with the record are rejected upon de novo review).

[35] State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, at ¶ 51, 264 P.3d at 1216.

[36] Three members of the PRT serve as members of a trial panel. RGDP, 5 O.S. Ch. 1, App. 1-A, Rule 6.6. The Professional Responsibility Tribunal is composed of twenty-one members, fourteen lawyers and seven non-lawyers, with this number subject to increase when necessary. RGDP, Rule 4.1. The lawyer members are appointed by the President of the Association subject to approval by the Board of Governors, and the non-lawyer members are appointed by the Governor of the State of Oklahoma. Id.

[37] RGDP, Rule 4.4: "The members of the Tribunal shall receive no compensation for their services, but shall be reimbursed for their travel and other reasonable expenses incidental to the performance of their duties."

[38] State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶¶ 5-6 , 330 P.3d 11, 13.

[39] State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 12, 330 P.3d 11, 14.

[40] State ex rel. Oklahoma Bar Ass'n v. Zannotti, 2014 OK 25, ¶ 19, 330 P.3d 11, 16 (Respondent's testimony . . . shows that Respondent has not accepted responsibility for his actions and undermines the testimony of his remorse."

[41] State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶¶ 2-3, 343 P.3d at 215.

[42] State ex rel. Oklahoma Bar Ass'n v. Weigel, 2014 OK 4, ¶ 27, 321 P.3d 168, 177.

[43] See, e.g., State ex rel. Oklahoma Bar Ass'n v. Givens, 2014 OK 103, ¶ 24, 343 P.3d at 219 (suspension for two years and one day); State ex rel. Oklahoma Bar Ass'n v. Wilcox, 2014 OK 1, ¶ 56, 318 P.2d at 1130, (disbarred from the date of interim suspension); State ex rel. Oklahoma Bar Ass'n v. Willis, 1993 OK 138, 863 P.2d 1211 (suspension for 15 months commencing on the date of interim suspension).

Similarly, we have approved resignations from the Bar Association with pending professional discipline proceedings and given such with an effective earlier date when a showing was made that the lawyer was no longer able to practice law as of that date. State rel. Oklahoma Bar Ass'n v. Perkins, 1988 OK 65, 757 P.2d 825 (rule stated).

[44] 5 O.S.2011 Ch. 1, App.1-A, RGDP, Rule 11.8:

A lawyer who has been suspended for two (2) years or less upon disciplinary charges may resume practice upon the expiration of the period of suspension by filing with the Clerk of the Supreme Court an original and two (2) copies of an affidavit affirming that affiant has not engaged in the unauthorized practice of law or otherwise violated the rules of the Association or the terms of the affiant's order of suspension. The affidavit shall also describe all business or professional activities of the affiant and places of residence during the term of the suspension. No order of Court is necessary; however, material deletions or misrepresentations in the affidavit shall be grounds for subsequent discipline.

A copy of the affidavit shall be served on the General Counsel by the lawyer at the time of its filing, who may within sixty days file a separate disciplinary complaint with the Professional Responsibility Commission stating the lawyer during the suspension engaged in the unauthorized practice of law or other actions which would render the lawyer subject to discipline.

[45] State ex rel. Oklahoma Bar Ass'n v. Offill, 2014 OK 27, ¶ 3, 324 P.3d 406, 407; State ex rel. Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 29, 323 P.3d 222, 228. See Shofner at note 15 supra.

[46] See Sonnier v. State, 2014 OK CR 13, ¶ 13, 334 P.3d 948, 952 citing Gagnon v. Scarpelli, 411 U.S. 778, 781-82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and Morrissey v. Brewer, 408 U.S. 471, 488-89, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("In the context of parole and probation revocation (both judicial proceedings), the United States Supreme Court has confirmed that minimal due process is required, but declined to prescribe a particular procedure for those proceedings.") (parenthetical information in original).

[47] Black v. Romano, 471 U.S. 606, 611, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985).

[48] Hagar v. State, 1999 OK CR 35, ¶ 10, 990 P.2d 894, 898.

[49] Black v. Romano, 471 U.S. at 612. Cf. Sonnier v. State, 2014 OK CR 13, ¶ 13, 334 P.3d 948, 952 citing Tate v. State, 2013 OK CR 18, ¶ 33, 313 P.3d 274, 283-84 (the Court of Criminal Appeals has stated in the context of judicial proceedings: "This Court has held that, in that context, a defendant must be 'sufficiently apprised' of the grounds on which probation or a suspended sentence is revoked.").

[50] State ex rel. Oklahoma Bar Ass'n v. Mothershed, 2011 OK 84, ¶ 56, 264 P.3d at 1218. See Schware v. Board of Bar Examiners, 353 U.S. 232, 238-239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) ("A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."); Willner v. Committee on Character and Fitness, 373 U.S. 96, 102, 83 S.Ct. 1175, 10 L.Ed. 244 (1963) (requirements of procedural due process must be met before a State can exclude a person from practicing law or from any other occupation in a manner or for reasons that contravene the Due Process Clause of the Fourteenth Amendment).

[51] State ex rel. Oklahoma Bar Ass'n v. Bolusky, 2001 OK 26, ¶ 8, 23 P.3d 268, 273.

[52] In re Ruffalo, 390 U.S. 544, 550, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

[53] State ex rel. Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 31, 323 P.3d 222, 229.

[54] State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, ¶ 10, 338 P.3d 639, 643; State ex rel. Oklahoma Bar Ass'n v. Bernhardt, 2014 OK 20, ¶ 31, 323 P.3d 222, 229.

[55] See 5 O.S.2011 Ch. 1, App. 3-A, Rule 1.3, states in part: "A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer must also act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."

See, e.g., State ex rel. Oklahoma Bar Ass'n v. Running, 2011 OK 75, ¶ 15, 262 P.3d 736, 740 ("Respondent has shown a repeated disregard of this Court's rules governing lawyers. He has been suspended three times for failure to pay bar dues. In the present case, he continued to practice law after suspension without notifying his clients or withdrawing from pending litigation, all in violation of Rules 1.3 and 9.1 RGDP, and Rule 5.5(a) RPC.").

[56] State ex rel. Oklahoma Bar Ass'n v. Bourland, 2001 OK 12, ¶ 14, 19 P.3d 289, 291 (explaining that an effective date of a resignation could be prior to the Court's order accepting the resignation; and also noting "the rule-mandated duties of a lawyer subject to final discipline, for example, notifying clients, withdrawing from proceedings, and notifying the Professional Responsibility Commission."); State ex rel. Oklahoma Bar Ass'n v. Perkins, 1988 OK 65, 757 P.2d 825, 827 ("The effective date of a resignation is upon filing the resignation with the Executive Director.").

[57] Barry v. Barchi, 443 U.S. 55, 64-65, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979).

[58] Schware v. Board of Bar Examiners, 353 U.S. 232, 246-247, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (A State could not, consistently with due process, refuse a lawyer a license to practice law on the basis of a finding that he was morally unfit when there was no evidence in the record).

[59] State ex rel. Oklahoma Bar Ass'n v. Anderson, 2005 OK 9, ¶ 15, 109 P.3d 326, 330 ("Our duty to review the facts to determine if an ethical violation occurred is non-delegable.").

[60] Barry v. Barchi, 443 U.S. at 64-65.

[61] See, e.g., State ex rel. Oklahoma Bar Ass'n v. Moon, 2013 OK 7, 295 P.3d 17 (during a deferred suspension of two years and one day a lawyer's additional acts of unprofessional conduct warranted disbarment). Cf. State ex rel. Oklahoma Bar Ass'n v. Brewer, 1989 OK 172, 794 P.2d 397, 399 (complaint of additional allegations of misconduct may be consolidated with reinstatement proceeding).

[62] See Brewer, 794 P.2d at 399, cited in note 61 supra, and the explanation in Brewer that when a disciplinary proceeding is pending, along with a reinstatement proceeding, and new allegations of professional misconduct are made by the Bar, they should be raised by filing an additional formal professional complaint with the Court followed by seeking available and appropriate procedural opportunities for consolidation to conserve judicial resources.

[63] State ex rel. Oklahoma Bar Ass'n v. Ijams, 2014 OK 93, ¶ 13, 338 P.3d 639, 643; State ex rel. Oklahoma Bar Ass'n v. Wilburn, 2010 OK 25, ¶ 13, 236 P.3d 79, 82; State ex rel. Oklahoma Bar Ass'n v. Spradling, 2009 OK 39, ¶ 10, 213 P.3d 570, 575.

[64] State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 84, n. 3, 60 P.3d 1024, 1027 (citing Rule 6.16, RGDP).

5 O.S.2011 Ch. 1, App. 1-A, Rule 6.16: "The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court."

 






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2013 OK CR 18, 313 P.3d 274, TATE v. STATE
Discussed
 2014 OK CR 13, 334 P.3d 948, SONNIER v. STATE
Discussed at Length
 1999 OK CR 35, 990 P.2d 894, 70 OBJ 2766, Hagar v. State
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 65, 757 P.2d 825, State ex rel. Oklahoma Bar Ass'n v. Perkins
Discussed at Length
 1989 OK 172, 794 P.2d 397, State ex rel. Oklahoma Bar Ass'n v. Brewer
Discussed
 1990 OK 9, 791 P.2d 815, State ex rel. Oklahoma Bar Ass'n v. Armstrong
Discussed
 1993 OK 138, 863 P.2d 1211, 64 OBJ 3290, State ex rel. Oklahoma Bar Ass'n v. Willis
Discussed
 2001 OK 12, 19 P.3d 289, 72 OBJ 553, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOURLAND
Discussed
 2001 OK 26, 23 P.3d 268, 72 OBJ 832, STATE ex. rel. OKLAHOMA BAR ASSN. v. BOLUSKY
Discussed
 2002 OK 84, 60 P.3d 1024, STATE ex. rel. OKLAHOMA BAR ASS'N v. SHOFNER
Discussed at Length
 2003 OK 61, 72 P.3d 27, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIGER
Discussed
 2003 OK 101, 81 P.3d 676, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ASTON
Discussed
 2004 OK 41, 93 P.3d 25, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CHAPPELL
Discussed
 2004 OK 46, 94 P.3d 31, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DOBBS
Discussed
 2005 OK 9, 109 P.3d 326, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ANDERSON
Discussed
 2005 OK 26, 114 P.3d 427, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. FUNK
Discussed
 1996 OK 75, 919 P.2d 427, 67 OBJ 2051, State ex rel. Oklahoma Bar Assn. v. Wolfe
Cited
 2009 OK 39, 213 P.3d 570, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SPRADLING
Discussed
 2010 OK 25, 236 P.3d 79, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILBURN
Discussed
 2010 OK 70, 240 P.3d 702, IN THE MATTER OF THE APPLICATION OF SPILMAN
Discussed
 2011 OK 75, 262 P.3d 736, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. RUNNING
Discussed
 2011 OK 84, 264 P.3d 1197, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOTHERSHED
Discussed at Length
 2012 OK 93, 295 P.3d 1096, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CASEY
Discussed
 2013 OK 7, 295 P.3d 17, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MOON
Discussed
 2013 OK 42, 304 P.3d 453, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. COOLEY
Discussed
 2013 OK 101, 321 P.3d 159, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. SODERSTROM
Discussed at Length
 2014 OK 1, 318 P.3d 1114, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WILCOX
Discussed at Length
 2014 OK 4, 321 P.3d 168, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WEIGEL
Discussed
 2014 OK 20, 323 P.3d 222, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BERNHARDT
Discussed at Length
 2014 OK 25, 330 P.3d 11, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ZANNOTTI
Discussed at Length
 2014 OK 27, 324 P.3d 406, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. OFFILL
Discussed
 2014 OK 78, 338 P.3d 629, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. BRADLEY
Discussed
 2014 OK 93, 338 P.3d 639, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. IJAMS
Discussed at Length
 2014 OK 96, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HART
Cited
 2014 OK 103, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIVENS
Discussed at Length
 2015 OK 5, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. DEMOPOLOS
Cited
 1998 OK 103, 976 P.2d 38, 69 OBJ 3488, State ex. rel. Oklahoma Bar Association v. Busch
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 1378, Punishment for Planning or Threatening Violent Act
Discussed
 21 O.S. 381, Bribing Officers
Cited
 21 O.S. 540, Obstruction of Public Officer - Recording an Officer
Discussed
 21 O.S. 644, Punishment for Assault and Battery
Discussed at Length
Title 74. State Government
 Cite
Name
Level

 74 O.S. 18p-1, Victims Services Unit of the Office of the Attorney General
Cited